# CASES DETERMINED

AT THE

## August Term, 1875.

---

In re KINDLING. (Habeas Corpus.)

```
| 39   35|
|103  663|
```

CONSTITUTIONAL LAW: ARREST: BAIL: DETENTION AFTER JUDGMENT.
*(1, 2) Judges of courts of record may make chamber orders to hold to
bail. (3) Upon affidavit showing the tort for which action is brought.
(4, 5) Detention of defendant on such order after judgment against him.*

1. The judges of the courts of record of this state take, under the constitution
   creating their offices, the powers of judges of such courts at the common
   law, including the powers commonly possessed by them *at chambers* at
   the time of the adoption of the constitution.
2. Such judges have power, under the constitution, to make orders at cham-
   bers to hold to bail, in proper cases, that being the established practice
   when the constitution was adopted.
3. In an action in the county court of Milwaukee county (which is a court of
   record) for a tort, the defendant was arrested upon an order of the judge
   of said court, made at chambers, upon an affidavit showing the tort.
   *Held,* that the arrest was lawful.
4. When a defendant lawfully arrested on mesne process fails to give bail, or
   is surrendered by his bail, before judgment, his liability to detention on
   such process does not expire on the recovery of judgment against him in
   the action; but, unless otherwise discharged by the court, his detention
   must abide a *capias ad satisfaciendum.*
5. What the prisoner's remedy would be, if, after judgment, the plaintiff
   should improperly and oppressively delay taking him in execution, is a
   question not raised by the writ of *habeas corpus* in this case.

APPEAL from the County Court of *Milwaukee* County.*

An action was commenced in said court in December, 1874, by one Jung, of Berlin, Germany, against *Herman Kindling*, to recover the value of personal property alleged to have been stolen from Jung by *Kindling;* and judgment for $1,168.95 was recovered against the defendant in the action July 29, 1875, and docketed two days thereafter. *Kindling* had been arrested upon an order made by the county judge at chambers, upon proper affidavits, and, in default of bail, confined in the county jail of Milwaukee county, and was so confined when and after the judgment was rendered. A *fi. fa.* was issued on the judgment August 4, 1875. On the same day, E. M. Hunter, Esq., a court commissioner, after a hearing upon an order to show cause, made the previous day on *Kindling's* application, made an order in the action for the discharge of the prisoner. This order was served on the sheriff August 5. Afterwards on that day (but before the sheriff had in fact released the prisoner), Jared Thompson Jr., Esq., a court commissioner, made an order in the same action, directing the sheriff to arrest *Kindling* and bring him before said commissioner. This order was based upon an affidavit of one of Jung's attorneys, which, after stating the recovery and docketing of said judgment, and the facts that *Kindling* was a resident of Milwaukee county, and that an execution against his property had been issued in said county and was in the hands of the sheriff, further states " that said judgment was recovered for the money value of personal property, consisting partly of jewelry and mostly of negotiable securities, stolen by said defendant from said plaintiff in Berlin, Germany, on or about the first day of September last, and that

---

*The importance of the questions raised upon the original return of the sheriff to the writ of *habeas corpus* in this case seems to justify a full report of the facts and arguments bearing upon them, although many of those questions were left undetermined by the judgment, in consequence of the supplemental return. — REP.

said defendant, immediately after said date, came to this city of Milwaukee," and that affiant is informed and believes "that said defendant brought with him to this city of Milwaukee a large amount of the proceeds of the property so stolen by him, which he sold, and that he now has a large amount of property under his control, but this deponent says that said defendant refuses unjustly to apply any of his property towards the satisfaction of said judgment, which is wholly unpaid." The affidavit then states that defendant had been arrested by order of the county judge, and required to give bail in the sum of $10,000, and had neither given bail nor deposited the amount, and that nevertheless Commissioner Hunter had made an order for his release from such arrest, and adds, "that during his imprisonment on said order of arrest, said defendant once before escaped into the state of Iowa, and there concealed himself under a false name, and the wife of said defendant, as deponent is informed, has already left this state, and deponent is afraid and verily believes that said defendant will be released from imprisonment under said order of Court Commissioner Hunter, and he has reasons to believe and does believe that said defendant will at once leave the state on being so released." Mr. Thompson's order recited as a fact (among others), made to appear to his satisfaction, that there was danger of the judgment debtor leaving the state, and reason to believe that he had property which he unjustly refused to apply to the payment of the judgment. *Kindling* being still in jail when this order was served, the sheriff, in obedience thereto, arrested him and brought him before Mr. Thompson on the same day. The prisoner moved for his discharge upon the following grounds: 1. That the affidavit on which the said commissioner's order of arrest was based, did not state facts sufficient to warrant the order. 2. That the cause of action in favor of Jung against the prisoner was merged in the judgment rendered, and was "thereby reduced to a simple indebtedness, upon which, in the absence of any

fraud committed subsequent to the judgment," *Kindling* could not be arrested upon a warrant under the statute regulating proceedings supplementary to execution.   3. That said statute is in conflict with the constitution of this state, and void.   4. That, inasmuch as defendant was arrested and held to bail prior to judgment in said cause, and the plaintiff therein had elected to issue execution, not against his body, but against his property, and after such last named execution was issued, the prisoner was discharged from custody by order made in said cause, the plaintiff could not now resume proceedings against the body.   The motion for discharge was denied.   The prisoner then objected to being examined under oath as to his property, on the ground that the affidavit on which Commissioner Thompson's order of arrest was made, showed that the cause was prosecuted to recover for property alleged to have been stolen by the prisoner in some foreign country, in which sec. 89, ch. 134 of the revised statutes of this state, would not be a protection against the use of this examination as evidence against him in a criminal action, and therefore he could not be compelled to submit to such examination without a violation of sec. 8, art. I of the constitution of this state.   The objection was overruled, and the oath usual in supplemental proceedings administered.

The prisoner having testified that he left Berlin, in Germany, about the first of September, 1874, and arrived at Milwaukee in December following, was asked: " What did you do with the eight Austrian bonds, of one thousand guilders each, which you took from the plaintiff?"   He refused to answer this question, on the ground that the answer might tend to convict him of crime in this state or elsewhere; and the commissioner adjudged him to be in contempt for such refusal, and delivered to the sheriff a warrant for his commitment for such contempt. This warrant recites, *inter alia*, that said *Kindling* had been arrested upon said commissioner's previous warrant, and commands the sheriff to commit him to the county jail, and

there keep him "until he shall stand ready to make full and proper answer to said question, or until he be discharged by due course of law."

The prisoner thereupon applied to this court for a writ of *habeas corpus cum causâ.* The petition stated that his confinement, after the delivery to the sheriff of the warrant last described was "under and by virtue of said warrant, and without other authority or pretense of right."

The writ of *habeas corpus* having issued, the sheriff made return thereto on the 17th of August, 1875, in which he stated, *inter alia,* that the order for the discharge of *Kindling,* made by Commissioner Hunter on the 4th of August, was served before Commissioner Thompson's *first* warrant of the same date for the arrest of the prisoner was issued; but that, being advised that said order of discharge was void in law, he (the sheriff) still held said *Kindling* by virtue of the original order for his arrest. The substance of the other facts stated in the return has already been given.

*Matt. H. Carpenter,* for the petitioner, contended, that by the terms of the statute which is relied upon as authorizing supplementary proceedings against a judgment debtor (Tay. Stats., 1565, § 100),* such debtor can be arrested upon the

---

* The statute contains the following provisions:

"§ 100.    *    *    After the issuing of an execution against property, and upon proof by affidavit of a party or otherwise, to the satisfaction of the court or a judge thereof, a county judge, or a court commissioner; that any judgment debtor residing in the county where such judge or officer resides, has property which he unjustly refuses to apply toward the satisfaction of the judgment, such court or judge, county judge or court commissioner, may by an order require the judgment debtor to appear, at a specified time and place, to answer concerning the same; and such proceedings may thereupon be had for the application of the property of the judgment debtor toward satisfaction of the judgment as provided upon the return of an execution. On an examination under this section, either party may examine witnesses on his behalf, and the judgment debtor may be examined in the same manner as a witness. Instead of the order requiring the attendance of the judgment debtor, the judge or county judge or court commissioner may, upon proof by affidavit, or other-

In re Kindling.

court commissioner's warrant only upon *proof*, to the commissioner's satisfaction, first, that there is danger of the debtor leaving the state. or concealing himself, and, secondly, that he has property *which he unjustly refuses* to apply to the judgment; that it is not enough to show that the judgment plaintiff or his attorney *believes* these things, but there must be evidence of *facts* satisfying, or tending to satisfy, the judicial mind of the commissioner; that the affidavit upon which Commissioner Thompson's warrant in this case was obtained, furnishes no proper proof either that plaintiff had property, or that he ever *refused* to apply it to the judgment, or that such refusal was *unjust;* that there can be no *refusal* to apply property in a particular manner until there has been a *demand* for such application, which is not here pretended; that every refusal, upon demand, to apply property to a particular judgment, is not necessarily *unjust;* that an affidavit under the statute should show possession of some particular property, describing it, and a request made upon and refused by the debtor to apply that particular property; and that the peti-

wise, to his satisfaction, that there is danger of the judgment debtor's leaving the state or concealing himself, and that there is reason to believe he has property which he unjustly refuses to apply to such judgment, issue a warrant requiring the sheriff of any county where such debtor may be, to arrest him and bring him before such judge, county judge or court commissioner.

"§ 101. Upon being brought before the judge or court commissioner he may be examined on oath, and if it then appears that there is danger of the debtor's leaving the state, and that he has property which he has unjustly refused to apply to such judgment, he may be ordered to enter into an undertaking, with one or more sureties, that he will from time to time attend before the judge or court commissioner as he shall direct, and that he will not, during the pendency of the proceedings, dispose of any portion of his property not exempt from execution. In default of entering into such undertaking, he may be committed to prison by warrant of the judge, or court commissioner, as for a contempt. No person shall, on examination pursuant to this chapter, be excused from answering any question on the ground that his examination will tend to convict him of the commission of a fraud, but his answer shall not be used as evidence against him in any criminal proceeding or prosecution."

tioner could not be in contempt for refusing to answer questions put to him in an examination based on such *void* warrant. *Blair's Case,* 4 Wis., 522; *Remington's Case,* 7 id., 643; *Whitney v. Brunette,* 15 id., 61; *Miller v. Brinkerhoff,* 4 Denio, 119; *Den v. Turner,* 9 Wheat., 541; *Staples v. Fairchild,* 3 Coms., 46. . 2. That the statute under which the proceedings were taken (Tay. Stats., 1565, §§ 100, 101) is void because in violation of sec. 16, art. I of the state constitution, which declares that "no person shall ·be imprisoned for debt arising out of or founded on a contract expressed or implied;" that every statute which would produce, though by indirection, a result forbidden by the constitution, is invalid (*Bronson v. Kinzie,* 1 How. (U. S.), 318; *The Passenger Cases,* 7 id., 283); that as to proceedings in judgments upon actions founded on contract, the repugnancy of the statute to the constitution is clear (*Bank v. Pugsley,* 47 N. Y., 638, and compare the remark of COLE, J. in *Remington's Case,* 7 Wis., 655, and the reasoning of the court in *Blair's Case,* 4 id., 522); and that the proceedings cannot be upheld in this case on the ground that the judgment is in an action *ex delicto,* for two reasons: (1) Because by the law of this state a debtor, in cases *ex delicto,* may be arrested and held to bail before judgment, and taken in execution *against the body* after judgment, and may be relieved after ten days' imprisonment, in the manner pointed out by the statute; but by issuing execution against the debtor's property, and taking these proceedings in aid of such an execution, the judgment plaintiff elected not to proceed against the debtor as a *tortfeasor;* and (2) Because this is not a case where one part of a statute is constitutional, while 'other *distinct provisions* are unconstitutional, but one in which the legislative provision *is indivisible,* and, being unconstitutional in its scope, must be regarded as wholly void, "although there may be a class of cases to which it might properly apply." SELDEN J., in *Wynehamer v. The People,* 13 N. Y., 442; *Slau-*

*son v. Racine*, 13 Wis., 398; *State v. Dousman*, 28 id., 541; *Warren v. Charlestown*, 2 Gray, 84. 3. That, if the statute were valid and the proceedings before the commissioner regular, the petitioner would not have been bound to answer the question put to him, nor guilty of contempt for refusing to answer it, after claiming his privilege; that the provision in our state constitution (sec. 8, art. I) that "no person shall be compelled in any criminal case to be a witness against himself," was intended to be as comprehensive as the privilege of a witness at the common law (*East India Co. v. Campbell*, 1 Ves. Sen., 246–7), and to exempt witnesses from answering questions under any circumstances where such answer would tend to criminate themselves, and this constitutional right cannot be taken away even by a statute which provides that though the witness shall be compelled to testify against himself, yet such testimony shall not be used against him (*Emery's Case*, 107 Mass., 172, 182–3); that no one can be punished for having refused obedience to a void statute (Cooley's Con. Lim., 188; *Strong v. Daniel*, 5 Ind., 348; *Astrom v. Hammond*, 3 McLean, 107); and that therefore, although in general a mere error of a court or magistrate having jurisdiction to commit for contempt cannot be reviewed on *habeas corpus*, yet the petitioner should be discharged on this writ, because the order of imprisonment for refusal to answer the question put, being in violation of a constitutional right, was *void*.

*F. C. Winkler, contra*, argued, 1. That Commissioner Hunter's order of release was *void*. The right to hold the prisoner by virtue of the original order of arrest made by the county judge, did not cease on the entry of judgment. The object of such an order is to hold the defendant to bail; and the liability of the bail is, "that the defendant shall *at all times* render himself amenable to the process of the court during the pendency of the action, *and to such as may be issued to enforce the judgment therein*," meaning, clearly, an execution against the body. The bail therefore, are liable to the

plaintiff if the defendant fails to render himself on an execution against the body legally issued at any time. *Appleby v. Robinson*, 44 Barb., 316. If no bail is given, the body remains in custody for the same purpose. The statute (R. S., ch. 127, sec. 9; Tay. Stats., 1453, § 10) points out the mode by which the defendant may be discharged at any time "before execution;" i. e. execution against the body (*Bostwick v. Goetzel*, 57 N. Y., 582); and this implies that during that time the order holds him, and the method of release provided is exclusive. In case of an escape, the sheriff is liable as bail until execution against the body (R. S., ch. 127, sec. 25; Tay. Stats., 1456, § 26), and could give bail for him at any time before such execution, and of course could also recapture and hold him. Whit. Pr. (3d ed.), 434. And the plaintiff is not obliged to resort to his execution against the body *in the first instance*, so cutting off his right to an execution against property. Our statutes on this subject are like those of New York, except that they omit the provision of the latter requiring the plaintiff, where the defendant is in actual custody, to charge him in execution within three months after entry of judgment. Here abuse is prevented by empowering the court to reduce the bail at any time while defendant remains in prison. Such being the law, the court commissioner had no authority to order the prisoner's release. The law directs how a writ shall be executed, and with that execution the court itself cannot interfere; although the court, on motion might vacate the order of arrest, as the court, also, may always review an order of the judge at chambers. The motion before Mr. Hunter was not to set aside the order of arrest, and his order does not pretend to set it aside, but directs the release in spite of it. 2. The affidavit of Mr. Winkler gave Commissioner Thompson jurisdiction. *Miller v. Adams*, 52 N. Y., 409; *In re Perry*, 30 Wis., 268. 3. Having jurisdiction, the commissioner was authorized to examine the defendant, and it was necessary for him to pass upon the propriety

of questions propounded. His judgment is subject to review, but cannot be called in question collaterally. If the order to answer in this case was erroneous, it can be corrected on a direct proceeding for a review, but not on *habeas corpus*. If the answer to the question asked would have tended to "criminate" the prisoner, he was privileged from answering it. Whether it would have had that tendency, depends on the construction to be given to secs. 71, 72, ch. 165, R. S.\* If the words "any other state or country" in the former mean a country beyond the limits of the United States, then the answer to the question might criminate him; otherwise not. As to the construction of this statute, see *Stanley v. The State*, 24 Ohio St., 166; *Comm. v. Uprichard*, 3 Gray, 434. The constitutional provision (Const. of Wis., art. I, sec. 8), does not apply, but the case is governed by the common law rule. *In re Falvey*, 7 Wis., 630. There is here no imprisonment for "debt arising out of or founded on contract." Even if the action were one for debt, the proceeding is in the nature of a *ne exeat*, which does not conflict with the constitution. *Dean v. Smith*, 23 Wis., 483; Cooley's Con. Lim., 180.

The court ordered a reärgument, on the constitutional power of the legislature to authorize, 1. The judge of a circuit court at chambers, in term time, to make an order dis-

---

\* These sections are as follows:

"Sec. 71. Every person who shall feloniously steal the property of another in any other state or country, and shall bring the same into this state, may be convicted and punished in the same manner as if such larceny had been committed in this state, and in every such case, such larceny may be charged to have been committed in any town or city into or through which such stolen property shall have been brought.

"Sec. 72. Every person prosecuted under the last section may plead a former conviction or acquittal for the same offense in another state or country; and if such plea be admitted or established, it shall be a bar to any further or other proceedings against such person for the same offense."

In re Kindling.

charging a prisoner from arrest or imprisonment under process or order of the court. 2. Such a warrant, nonbailable in the first instance, as provided in §§ 100, 101, ch. 134, Tay. Stats., supplementary to any judgment, whether recovered *ex contractu* or *ex delicto*. 3. The judge of the circuit court at chambers, in term time or vacation, to issue such a warrant. 4. The punishment as for contempt of court, of disobedience of an order made by the judge of a circuit court at chambers, not actually made an order of the court. 5. The issuing of an attachment by the judge of a circuit court at chambers for a contempt.

The court also made an order at the same time, that the prisoner be committed, until its further order, to the custody of the sheriff of Dane county.

On the 27th of August, the sheriff made a further return, from which it appeared that after a hearing upon an order to show cause, the county court of Milwaukee county had made an order, August 25th, vacating the order of Commissioner Hunter of August 4th, for the release of the prisoner, on the ground that it had been erroneously made. On the 30th of the same month, *Kindling* appealed to this court from that order.

By stipulation, the cause was again submitted upon printed briefs, viz.: that of *Mr. Carpenter* for the petitioner, and that of *Jenkins, Elliott & Winkler, contra.**

---

*The following provisions of the constitution of this state were cited by counsel in their arguments:

Art. I, sec. 16. "No person shall be imprisoned for debt arising out of or founded on a contract, expressed or implied."

Art. I, sec. 8. "No person * * * shall be compelled in any criminal case to be a witness against himself."

Art. VII, sec. 2. "The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts, courts of probate and in justices of the peace." Sec. 11. "The supreme court shall hold at least one term annually. * * A circuit court shall be held at least twice in each year, in each county of this state. * * * The *judges* of the

*Mr. Carpenter* argued substantially as follows:

I. The legislature cannot confer upon court commissioners judicial powers exceeding the powers of a judge at chambers *at the common law;* and these are limited to the details of practice, and do not extend to the determination of any substantial right between the litigants. It is said that the proviso in sec. 23, art. VII of the constitution, is satisfied if the statutes conferring power upon court commissioners give the circuit judges the same power. But the legislature is not authorized to confer any judicial power on the circuit judges. The judicial power of the state — all of it with a single exception — is vested by the constitution in the *courts*, and cannot be diverted to the *judges*. The intention of the framers of the constitution on this subject is plain. Masters in chancery exercised many important judicial functions. The constitution forbids the office (art. VII, sec. 19), and thus compels the *courts* to exercise these functions. This provision is kindred in spirit to that of the 23d section, which restricts the powers of these persons *to be appointed*, to the narrow limit of power exercised by judges at chambers. As the legislature is not authorized to vest any judicial power in circuit judges, the proviso to sec. 23 manifestly refers to some certain and well known *quantum* of judicial power; and this must be the common-law power of a judge at chambers in regard to causes pending in court: a power incident to the jurisdiction of the court of which he is a judge. By the common law, apart from all statutory provisions, the judges of the common law courts have from time immemorial exercised at chambers, in

circuit courts may hold *courts* for each other, and shall do so when required by law." Sec. 19. "The testimony in cases in equity shall be taken in like manner as in cases at law; and the office of master in chancery is hereby prohibited." Sec. 23. "The legislature may provide for the appointment of one or more persons in each organized county, and may vest in such persons such judicial powers as shall be prescribed by law: *provided*, that said power shall not exceed that of a judge of the circuit court at chambers."

vacation as well as in term time, jurisdiction "over certain minor and practical *proceedings, especially irregularities,* that arise in conducting an action or defense." 3 Chitty's Gen. Pr., 19. But disobedience of an order made at chambers can be punished only by the court itself, after the order has been made a rule of court. Chitty, *ubi supra; Prescott v. Roe,* 9 Bing., 104; *Baker v. Rye,* 1 Dowl., 689; *Hincliffe v. Jones,* 4 id., 86; 1 Tidd's Pr., 511. The court will take no notice of the order until it is made a rule of court (*Jameson v. Raper,* 3 Moore, 65, note); and it cannot be made a rule of court until the following term (*King v. Price,* 2 Dowl., 233); and the motion to make it a rule of court must be separate from that to attach for disobedience of the order (*Stainland v. Ogle,* 3 Dowl., 99). After such order has been made a rule of court, it becomes the act of the court, and the judge's power to make it cannot be questioned. *Wilson v. Northrup,* 4 Dowl., 441. The decision of a judge at chambers may be reviewed by a single judge in term. *King v. Meyers,* 5 Dowl., 686. After a judge's order has been made a rule of court, a motion to vacate must be directed against the *rule,* not the order. TINDAL, C. J., in *Clement v. Weaver,* 1 Dowl. N. S., 193. Many acts of parliament have increased the powers and enlarged the jurisdiction of the English judges at chambers; but these statutes, having been enacted since our revolution, have no effect here. The English statutes have, in many instances, vested in the judges at chambers powers which do not relate to pending causes, and are no part of chamber jurisdiction proper; and as to such statutory powers the court exercises no appellate jurisdiction. It is only where the judge at chambers acts *as the delegate of the court* and exercises its jurisdiction, that an appeal lies to the court. *Railway Co. v. Fielden,* 15 Jur., 19. An examination of the works of practice, and of the cases, will show conclusively that the power of a judge at chambers extends only to the making of such rules or orders as are necessary to speed the causes pending in

court, clear away the technical obstacles, and thus enable the court to come more speedily to a hearing of the merits of the causes. But every issue, whether of law or fact, arising in the cause must be determined by the court. I cannot find an instance in which a demurrer has been passed upon at chambers; and it has been decided that a judge at chambers cannot order a *false* plea to be stricken out. *Milley v. Walls*, 1 Dowl., 648. The powers of a judge at chambers, at the common law, are exercised as preparatory to an exercise of judicial power, that is, the determination of the rights of the parties on the merits of the case; and do not extend to the adjudication of any substantial right between the parties.

II. The whole scheme of "proceedings supplementary to execution" is unconstitutional. When our constitution was adopted, it was one of the well established heads of equity jurisdiction to enforce the judgments of courts of law upon the property of reluctant debtors, by creditors' bill; and this, *independent of statutory provisions. Hendricks v. Robinson*, 2 Johns. Ch., 283; *Brinkerhoff v. Brown*, 4 id., 671; *McDermott v. Strong*, id., 689; *Spader v. Davis*, 5 id., 280; *Egbert v. Pemberton*, 7 id., 208; *Spader v. Hadden*, 20 Johns., 565; *Bean v. Smith*, 2 Mason, 252; *Tappan v. Evans*, 11 N. H., 311; *Waterman v. Cochran*, 12 Vt., 699. The statute (Tay. Stats., 1564–5) provides that after execution returned unsatisfied, the judgment creditor "is entitled to an order from the judge of the court, or a county judge or court commissioner," requiring the judgment debtor to appear *before such judge or commissioner*. It then provides a code of procedure for the case, vesting in the judge or commissioner substantially the powers of a court of equity on the old creditors' bill, with power (p. 1567, § 111) to punish disobedience of any person, party or witness, as for a contempt, to appoint a receiver, etc., etc. This court has repeatedly held, what is apparent from the statute itself, that its provisions are, and were intended to be, a substitute for the proceedings on cred-

itors' bill in a court of equity, and that they abolish the old proceedings. *In re Remington*, 7 Wis., 643; *Graham v. R. R. Co.*, 10 id., 459; *Seymour v. Briggs*, 11 id., 196. In other words, the statute vests in a circuit judge, county judge or court commissioner, the judicial power of the state in a matter of equity; whereas the constitution vests this power in the courts. If the legislature may vest in a judge or court commissioner one head of equity jurisdiction, it may another, and all others; and it may do the same thing in matters of law, and thus divert from the courts all their constitutional jurisdiction. As to those provisions of the statute which authorize judges and commissioners to appoint receivers, punish for contempt, and to adjudicate upon substantial rights of the parties litigant, and to acquire jurisdiction over persons *not parties* to the action, adjudicate upon their rights of property, and render judgments, — the conflict between these and the policy and language of the constitution is especially plain and palpable. These are clearly judicial powers, powers reaching to the determination of substantial rights; and they are filched from the courts, in which the constitution vests them, and conferred upon judges out of court, and upon court commissioners, in violation of the constitution.

III. I cannot find that by the common law a judge at chambers was ever authorized to order an arrest, in cases where the defendant might properly be arrested. Such power has been conferred by recent statutes (1 and 2 Vic., c. 110, sec. 3; 78 Stats. at Large, p. 543). By the *ancient* common law, no defendant could be arrested upon *mesne* process for civil injuries unaccompanied by force. Subsequent statutes, passed before our revolution, gave a right to commence certain actions by *capias*. But then the writ issued out of the court as a matter of course, without special direction; the arrest was by command of the court; and the *capias* had to be *tested* in term time. Tidd's Pr., 128–9. But inasmuch as the jurisdiction of a judge at chambers is merely an incident

of the jurisdiction of the court, it is worthy of consideration whether, in cases where the defendant may be arrested and held to bail for his appearance merely, the arrest is not so incident or collateral to the main object of the suit as to fall within the power of a judge at chambers; and whether the absence of precedents for such judge's order should not be ascribed to the fact that the *capias*, in the proper cases, went without special direction or order of the court. On the other hand, it may well be said that an arrest of the person — especially if it is to be held, as claimed in the argument of this case, that such imprisonment may, at the election of the plaintiff, be continued during the natural life of the defendant, — should be the result of original and not delegated judicial power.

IV. What a judge may do at chambers, he may undo at chambers; and if he can order an arrest, there would seem to be no objection, on the score of power, to his ordering a release from the arrest. *Burness v. Guiranovich*, 4 W., H. & G., 520; *Thompson v. Becke*, 4 Q. B., 759. Moreover it is well settled that a judge at chambers for new and sufficient reasons could discharge from custody under the order or process of the court. He could never make an order, in opposition to the order or process of the court, which would amount to or have the effect of a final adjudication upon any substantial right, but he could control the execution of process of the court, and even its judgments, until the parties could be again heard in court. *Doe v. Roe*, 11 A. & E., 333; *Jameson v. Raper*, 3 Moore, 65, note; *Bartlett v. Stinton*, L. R., 1 C. P., 483; *Plomer v. Ball*, 5 A. & E., 823; 3 Chitty's Gen. Pr., 19.

V. Applying these principles to the case at bar, 1. If the original order of arrest was invalid, this cause for the detention falls to the ground. 2. If that order was valid, it was within the power of a judge at chambers, or court commissioner, for sufficent reasons, to discharge from custody. The order of Commissioner Hunter for such discharge was prop-

erly made. The judgment creditor's election to proceed by an execution against property ought to be regarded as an abandonment of the remedy by execution against the body, at least until the former remedy is exhausted. *Ex parte Knowell*, 13 Ves., 192. By the common law, the commitment of the debtor in execution was a satisfaction of the debt; but by the statutes of this state (R. S., ch. 162, sec. 11), after the remedy by imprisonment is exhausted, execution may be issued against the property. Sec. 7, ch. 134, R. S., provides that in cases where the defendant *might have* been — that is, might have been but was not — arrested, execution may go against property before execution against the body, but only in that case. But the case where an arrest *was in fact* made, is regulated by sec. 10, and the language " execution *may* issue " against his body, should be read, *shall* issue, etc. *Cutler v. Howard*, 9 Wis., 309. Then sec. 11 provides that while the body is held in execution, no execution against the property shall issue. The plain intention of these provisions is to compel the plaintiff to an election; and where the defendant is in jail under process in the action, and the plaintiff resorts to an execution against property, he ought to be held to have made his election to abandon the imprisonment. Again, the arrest under the county judge's order is by law merely a *provisional* remedy. Webster defines *provisional* as follows: " Provided for present need or for the occasion; temporarily established; temporary; as a provisional government or regulation; a provisional treaty." It is an order to have effect until the rendition of judgment, *and no longer*. *Corwin v. Freeland*, 6 How. Pr., 244 (decided in 1851); *Bank v. Mott*, 9 Abb. Pr., 110. When these decisions were made, the New York statutes were precisely like ours in regard to provisional remedies. But even conceding that Mr. Hunter's order was erroneous, it was valid until set aside; and there was therefore no justification of the imprisonment when this writ of *habeas corpus* was applied for. *Jones v. Dow*, 15 Wis., 582. The county court

has since vacated Mr. Hunter's order; but the appeal taken by *Kindling* from this order of the court stays its effect, and leaves the commissioner's order in full force. This would·be true in the absence of any statutory provision on the subject. *Hudson v. Smith*, 9 Wis., 122; *Ins. Co. v. McCormick*, 20 id., 265; *Corning v. Troy Iron Co.*, 15 How. Pr., 451; *Green v. Winter*, 1 Johns. Ch., 77; *Yeaton v. United States*, 5 Cranch, 281; *Schooner v. United States*, 6 id., 329; *Jennings v. Carson*, 4 id., 2; *Penhallow v. Doone*, 3 Dal., 54. I find nothing in our statute, which, on an appeal from an order like this, requires anything more than the giving of the undertaking for $250, required on appeal from all orders whatsoever, to suspend the operation of the order appealed from. *Ins. Co. v. McCormick*, *supra*. 3. The order of Commissioner Thompson, committing the prisoner for the supposed contempt, was an exercise not only of a power which cannot be conferred on a court commissioner under our constitution, but of a power which the statute does not attempt to confer. Under Tay. Stats., 1564–5, §§ 100, 101, there can be no commitment except on refusal to give bail, which was not ordered in this case; and under § 111, commitment can be made only for violation of those orders of the commissioner which the practice requires should be served in writing. The refusal to answer a question is clearly not a case contemplated in this section.

*Jenkins, Elliott & Winkler*, *contra*, argued substantially as follows :

I. The legislative acts which have from time to time vested the circuit judge at chambers with authority to hear and determine certain judicial questions which, by the common-law practice of England, could only be heard in term, have passed unchallenged through all the courts of this state, and should not now be arraigned as unconstitutional, except with the greatest caution. By sec. 28, ch. 132, R. S. (introduced with the code), the judge was authorized to give judgment upon a frivolous pleading; an important judicial function, involving

not only the right of the party to maintain his pleading, but (as the statute was first enacted) the consequence of wholly shutting out a meritorious defense which he might have. *F. & M. Bank v. Sawyer*, 7 Wis., 279. But this section has been sustained as constitutional by this court (*Clapp v. Preston*, 15 Wis., 543), and we think correctly. The object of that clause of the constitution which vests "the judicial power of the state in a supreme court, circuit courts," etc., was to prescribe what courts we should have, and not to define the practice of those courts. For some time before the constitution was adopted, there had been, in the course of law reform, considerable relaxation, by legislative enactments, of the older, stringent rule requiring most if not all the business of a court to be done in term time. Chief Justice DENMAN, in 1838, procured the passage of an act of parliament permitting the judges of Westminster Hall to hear causes in vacation. It is difficult to believe that the convention in framing, or the people in adopting, our constitution, intended that the practice regulating what a judge might do at chambers, and what powers he could exercise only in term, should remain rigidly fixed as it was at that time. They could not in reason have so declared unless they considered the reform or change in that direction an evil one; and in that case they would have made the declaration an explicit one, instead of leaving it to vague implication. The word "court," therefore, seems to be used in the provision referred to, not in the narrow sense of a court sitting in term, but rather to designate the body which is to exercise the judicial power, without attempting to prescribe the time, place, or manner of its exercise. Except in the case of the supreme court, the courts provided for have but a single judge. In him the judicial power of the court is vested. The time and place where he shall hear causes, the manner in which decisions shall be rendered and recorded, are matters which must be within the control of the legislature. The court does not cease when its term is ended. At common law,

"terms," properly speaking, were only held by the courts at Westminster, the judges sitting in banc. The sessions or assizes, under the various commissions, are not "terms," but are held in vacation. 3 Black. Com., 60, 276 et seq.; 3 Chitty's Gen. Pr., 90 et seq. If the term "circuit courts," in sec. 2, art. VII of our constitution, means only courts sitting in term, how can a judge at chambers exercise even the slightest judicial power? Sec. 23 implies that they have exercised, possibly that they may exercise, such powers, but it confers none. The only inference that can be drawn from it is, that sec. 2 does not mean courts in term. Suppose that sec. 23 were not found in our constitution: would it then be contended that no part of the judicial power could be exercised otherwise than by the court in term? The constitution of the United States vests the judicial power in " one supreme court, and in such inferior *courts* as the congress may from time to time ordain and establish;" yet a vast number of acts of congress confer powers on the judges at chambers; and these have never been questioned, and have been acted on by all the great judges of the land. Among these are the bankrupt law, and many acts relating to admiralty practice. See secs. 574–6, p. 101, R. S. of the U. S. An order made, or judgment given, by a judge at chambers, where the statute authorizes it, is an order or judgment of the *court*, as is a rule entered by an attorney, where that authority is given, or a judgment rendered by the mere act of the clerk, on a default. *Wells v. Morton*, 10 Wis., 468.

II. It does not follow that the legislature can give a court commissioner the same power which it may confer on a judge at chambers. The officer referred to in sec. 23, art. VII, called in our statute a court commissioner, was intended to be a subordinate officer in our system, vested with strictly limited powers. The proviso, that his power shall not exceed " that of a circuit judge at chambers," cannot reasonably be said to mean, that it shall not exceed the power which it might in future be deemed wise to allow the judge to exer-

cise at chambers. We take it to mean, that it should not exceed the power ordinarily exercised by a judge at chambers at the time of the adoption of the constitution. An order of arrest is the legitimate successor of the *capias ad respondendum*, and is process of the court, like an injunction order made by a judge or court commissioner. *Ilsley v. Harris*, 10 Wis., 95. Where such process had been issued according to law, and the statute prescribed the method of its execution, a judge at chambers could not interfere with its regular course. He could admit a party arrested to bail, and perhaps, in some cases, under particular statutes, inquire into and determine particular questions. But the only power to which Commissioner Hunter's order of discharge could be referred, is the general, inherent power of a court over its own process; and this at common law belonged exclusively to the court, and not to the judge at chambers. It is one of those high powers, affecting important interests, which it was never intended to confer on court commissioners. *Boinay v. Coats*, 17 Mich., 411. Again, a court commissioner's powers, under sec. 23, art. VII, must be "prescribed by law;" and this seems to mean that the specific powers shall be prescribed by statute, and he shall not be allowed to range over a wide field of undefined, discretionary powers. In the power he exercises, he should have the plain, direct, explicit statute for his guide. We contend that, for this reason, the statute giving him "all the powers of a judge at chambers" is void.

III. The warrant provided for by §§ 100, 101, pp. 1564–5, Tay. Stats., is simply to arrest the defendant and bring him before a court commissioner, to be examined whether he shall be required to give bail or allowed to go without bail. We have found no constitutional provision which it violates. It is a less stringent warrant than one which requires him to give bail at once or be imprisoned. Warrants by which actions of tort are commenced before justices of the peace in this state, have always been nonbailable in the first instance. Tay.

Stats., 1357, § 30, and 1359, § 39. We think also that it could be granted by a court commissioner. At the time of the adoption of our constitution, writs of *ne exeat* were a recognized provisional remedy in a creditor's suit (*Mitchell v. Bunch*, 2 Paige, 606), and could be allowed by a judge at chambers or an "injunction master." 1 Barb. Ch. Pr., 621, 649. All writs and orders in the nature of process would be of very little practical value if they could be had only of a court in term. Proceedings supplemental to execution are but a new form of creditor's suit. Hence, by express statutory provisions, they are accompanied by the remedial processes of the court of equity — the injunction, the receiver; and it would be strange if the *ne exeat* were wanting. The warrant in question is strictly in the nature of a *ne exeat*, except that, with greater leniency, the defendant is allowed a hearing before the holding to bail, or imprisonment in default of bail, is made absolute.

IV. But the subsequent proceedings before a court commissioner, authorized by the terms of the statute — the hearing of testimony, making orders under § 106, and enforcing them under § 111 — certainly exceed the powers of a judge at chambers as generally understood twenty-five years ago. They amount in substance to nothing less than the trial of a suit in equity, and the pronouncing and enforcement of the decree. If it were an original question, the statute, so far as it confers these powers on court commissioners, would probably be held void. But that would not make the initiatory proceedings a nullity. The proceedings are in the case, and under the immediate control of the court. *Barker v. Dayton*, 28 Wis., 367. If the commissioner cannot act beyond issuing the warrant and determining whether it shall be made absolute, the presumption must be, that all subsequent proceedings will be had before the court or the judge. On this view, the commitment for refusing to answer was in excess of the commissioner's power, but the warrant was good. But is not this

whole question closed against inquiry? The statute of supplemental proceedings, with full power in the county judge as well as the circuit judge, is nearly twenty years old; with all its present powers in the court commissioners, it is over fifteen years old. Cases under it must be counted by many hundreds, if not thousands. There is not a power granted by it that this court has not affirmed by express adjudication. And it has always been treated as a valid act. *Graham v. R. R. Co.*, 10 Wis., 459 ; *Second Ward Bank v. Upmann*, 12 id., 499; *Brown v. Hebard*, 20 id., 326; *In re Mary J. O'Brien*, 24 id., 547; *Barker v. Dayton*, 28 id., 367; *Gould v. Dodge*, 30 id., 621; *In re Perry*, id., 269; *Lamonte v. Pierce*, 34 id., 483. Even the power of the court commissioner to punish for contempt, in disobedience of his order, is expressly affirmed in *In re Perry* and *In re O'Brien, supra.*

V. The order of Commissioner Hunter having been set aside by the county court since the former argument, the original order of arrest remains in full force. If the appeal from the vacating order of the county court suspends the operation of such order, then the motion to the county court to set aside Mr. Hunter's order, which is in effect an appeal from it (*Moore v. Cord*, 13 Wis., 413; *Schauble v. Tietgen*, 31 id., 695; Tidd's Pr., 511), must equally suspend the operation of said last mentioned order.

VI. A judge at chambers may make an order of arrest. It is but another form of *capias ad respondendum*. That writ, at the time of and prior to the adoption of the constitution, generally issued "of course;" and where an order was required, it was made by a single judge at chambers. 3 Chitty's Gen. Pr., 325, 326; 1 Burr. Pr., 95, 97. In fact all writs and process, and orders for them, not issuable of course, were, as in practice they must be, granted at chambers.

VII. We need not reärgue the point that the entry of judgment does not *ipso facto* put an end to the order of arrest. It is contended that in sec. 10, ch. 134, R. S., the word *may*

means *shall*, and hence that execution against the person must be issued immediately. But that section is derived from sec. 5, p. 364, vol. 2, R. S. of New York of 1829, where it could have no such meaning, as the same statute (p. 556, secs. 36, 37) provided for a discharge of the defendant if he was not charged in execution within three months. The passage cited from *Corwin v. Freeland* is the merest *dictum*. *Bank v. Mott* relates to an *amendment* to the New York code, which was never adopted here, but implies that the law was previously otherwise.

RYAN, C. J. The sheriff's supplemental return greatly simplifies this case. Under the order of the county court vacating the order of the court commissioner which assumed to discharge the prisoner from custody, the proceedings before both the court commissioners become immaterial to the detention of the prisoner; leaving it resting on the original order of arrest made by the judge of the county court. We are none the less under obligation to counsel for the learning and ability of the briefs submitted on the reärgument which we had ordered, discussing grave and delicate questions not now in the case.

The constitution vests the judicial power of the state in courts which it establishes or authorizes to be established, to be held by judges whose offices it creates or authorizes to be created. This exhausts the judicial power. *Att'y Gen. v. McDonald*, 3 Wis., 805; *Gough v. Dorsey*, 27 id., 119. But the courts of record so established are courts proceeding according to the course of the common law. *Putnam v. Sweet*, 2 Pinney, 302; *Callanan v. Judd*, 23 Wis., 343. And the judges of these courts take, under the constitution creating their offices, the powers of judges of such courts at the common law, including the powers commonly possessed by them at chambers, at the time of the adoption of the constitution. *Waterman v. Raymond*, 5 Wis., 185; *Conroe v. Bull*, 7

id., 408; *Re Remington*, id., 643; *Re Gill*, 20 id., 686. Such powers of judges of the circuit court at chambers are expressly recognized in the constitutional provision authorizing like judicial powers to be conferred on other officers.

At the common law, before 52 Hen. III, ch. 23, 13 Ed. I, ch. 11, 25 Ed. III, stat. 5, ch. 17, and 19 Hen. VII, ch. 9, arrest on mesne process in civil actions was authorized only for tort *vi et armis*. Petersdorff on Bail, 4; 3 Chitty's Gen. Pr., 324; 1 Tidd's Pr., 128; 3 Black., 292. Under these statutes, prior to 12 Geo. I, ch. 29, arrest was authorized on *capias ad respondendum* in all civil actions, without affidavit or order; bail being taken for the sum laid in the *ac etiam* clause, under 28 Hen. VI, ch. 9. But under the temporary act of 12 Geo. I, ch. 29, made perpetual by 21 Geo. II, ch. 3, arrest was authorized on mesne process in civil actions, only upon affidavit of cause of action; the sum sworn to be due being indorsed on the writ, and bail required for that amount only. In cases of unliquidated damages, however, whether *ex contractu* or *ex delicto*, in which a sum certain could not be sworn, arrest was authorized only upon order of the court or judge, made upon affidavit of cause of action, and fixing the amount of bail to be taken. This appears to have been the first use of orders to hold to bail. And even in cases of liquidated damages, in which arrest was authorized upon affidavit only without order, orders might always be made and sometimes were made to hold to bail. 3 Chitty's Gen. Pr., 324, 326; 1 Tidd's Pr., 128, 172; *Fleetwood v. Poictier*, Barnes' Pr. Cases, 67; *Le Writ v. Tolcher*, id., 79; *Reynoldson v. Blades*, id., 108. These cases were in the common pleas, but the same practice prevailed in all the superior courts of common law.

In practice, orders to hold to bail were commonly made by the judges at chambers, although they could generally be discharged by the court only. Chitty, Tidd, *ubi supra; Hadderweek v. Catmur*, Barnes' Cases, 61; *Russel v. Gately*, id.,

76; *Treherne v. Gressingham*, id., 87; *Stapleton v. Stark*, id., 109. The cases in Barnes were all long prior to 1 and 2 Vict., ch. 110, which counsel for the prisoner relied on as first giving authority to judges at chambers to make orders to hold to bail. See also *Thompson v. Becke*, 4 Q. B., 759, and *Burness v. Guiranovich*, 4 Exch., 520, after 1 and 2 Vict.

The English statutes cited, prior to the 1 and 2 Vict., came here with the common law and as part of it. *Coburn v. Harvey*, 18 Wis., 147; *Spaulding v. Railway Co.*, 30 id., 110. .And, until imprisonment for debt was modified or abolished in many of the states, the English rule prevailed very generally in this country from the beginning. Encyc. Am., " *Capias*," " Debtor and Creditor "; 3 Tucker's Black., App., 37; 2 Kent, 397; Bouvier's Inst., sec. 2802; 5 and 9 Dane's Abr., ch. 150; Graham's Pr., 492; 1 Burrill's Pr., 88, 97, 328. And the practice of proceeding on a judge's order to hold to bail in all cases of arrest on mesne process seems to have been very common. This was certainly the practice established by statute of the territory, when the state constitution was adopted. R. S. 1839, 264.

The state constitution abolishes imprisonment for debt arising on contract. This superseded the territorial statute so far as it related to actions *ex contractu;* but so far as it related to actions *ex delicto*, that statute appears to have remained in force until the revision of 1849, when it was repealed. R. S. 1849, ch. 157. That revision continued the practice in actions of tort. R. S. 1849, ch. 91. And, with exceptions not material here, the same practice of arrest on mesne process, or at any time before judgment, in actions of tort, upon order of the judge of the court, is still continued by law. R. S. 1858, ch. 127; *Ilsley v. Harris*, 10 Wis., 95; *Cotton v. Sharpstein*, 14 id., 226; *Re Bowen*, 20 id., 300; *Gibbs v. Larrabee*, 23 id., 495; *Wagner v. Lathers*, 26 id., 436.

And we cannot doubt that, under the constitution, the judges of courts of record have power at chambers to make

orders to hold to bail, in proper cases, in actions brought in their courts.

The arrest of the prisoner for the tort with which he was charged by affidavit, upon the order of the judge of the county court, in which he was sued for the tort, was therefore lawful; and the order warrants his present imprisonment, unless its force has been in some way arrested or spent.

We understand the ground on which the court commissioner made the order, since revoked, discharging the prisoner from custody, and which was relied on by counsel here, is that the right of imprisonment on mesne process expires upon recovery of judgment in the action. If that were so, it would be difficult to see any useful purpose in the right of arrest.

Bail upon arrest, and imprisonment in default of bail, go for the same purpose. " When the defendant is regularly arrested, he must either go to prison for safe custody, or put in special bail to the sheriff. For the intent of the arrest being only to compel an appearance in court at the return of the writ, that purpose is equally answered whether the sheriff detains his person or takes sufficient security for his appearance, called bail. . . . because the defendant is bailed or delivered to his sureties, upon their giving security for his appearance, and is supposed to continue in their custody instead of going to gaol." " Upon the return of the writ, . . . . the defendant must appear according to the exigency of the writ. This appearance is effected by putting in and justifying bail to the action, which is commonly called putting in bail above." " These bail . . . . undertake that if the defendant be condemned in the action, he shall pay the costs and condemnation or render himself a prisoner, or that they will pay it for him." 3 Black., 290, 291.

Under our statute, the distinction between bail below and bail above is very much done away; the bail taken by the sheriff, if accepted or justified, standing as bail to the action. And the statute itself gives the undertaking of the bail, not mate-

rially different from the common-law bail-piece, "that the defendant shall at all times render himself amenable to the process of the court during the pendency of the action, and to such as may be issued to enforce the judgment therein."

When the defendant fails to give bail or is surrendered by his bail, before judgment, his liability to detention corresponds with the liability of bail to the action; and his detention, unless otherwise discharged by the court, must abide a *capias ad satisfaciendum*. When that is issued and served, the imprisonment on mesne process ceases, and thenceforth rests upon the execution against the body. *Re Mowry*, 12 Wis., 52.

What may be the remedy of the prisoner, consistent with the validity of his detention, if the plaintiff should improperly and oppressively delay taking him in execution, is not a question before us on this writ. It is conclusive of the case before us, that his present detention is regular and lawful. And it is therefore our duty to remand him to the custody of the sheriff of Milwaukee county.

*By the Court.* — Ordered accordingly.