STATE of Wisconsin, Plaintiff-Respondent,

v.

Douglas Meier WILLIAMS, Defendant-Appellant.

Supreme Court

*No. 2010AP1551–CR. Oral argument December 1, 2011. —Decided May 30, 2012.*

2012 WI 59

(Also reported in 814 N.W.2d 460.)

For the defendant-appellant there were briefs filed by *Stephen P. Hurley, Dean A. Strang, Marcus J. Berghahn* and *Hurley, Burish, & Stanton, S.C.,* Madison and *Jonas B. Bednarek* and *Bednarek Law Office, S.C.,* Madison, and oral argument by *Stephen P. Hurley.*

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *J.B. Van Hollen.*

An amicus curiae brief was filed on behalf of Wisconsin Association of Judicial Court Commissioners and Wisconsin Family Court Commissioners' Association, Inc. by *Jon P. Axelrod, Joseph A. Ranney, John C. Gardner,* and *DeWitt Ross & Stevens S.C.,* Madison, and oral argument by *Jon P. Axelrod.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This is an appeal of a decision of the Circuit Court for Rock County that the court of appeals has certified to us. The

certification asks us to determine whether circuit court commissioners are prohibited from issuing warrants because doing so involves the exercise of judicial power, which Douglas Meier Williams argues is vested solely in courts and elected judges by Article VII, Section 2 of the Wisconsin Constitution. Williams asserts that the search warrant that was issued for his home by a circuit court commissioner was invalid as beyond the lawful authority of court commissioners, and that the evidence obtained upon the execution of the warrant should be suppressed. Williams' argument focuses on the 1977 repeal of Article VII, Section 23, of the Wisconsin Constitution, which specifically referred to the assignment of certain judicial powers to "persons," which he asserts included court commissioners. Williams asserts that by repealing Section 23 and adopting other sweeping changes to the court system in 1977, the voters of Wisconsin chose to vest "the judicial power" solely in elected judges and therefore, any exercise of such power by unelected persons, such as circuit court commissioners, violates the Wisconsin Constitution.

¶ 2. Under Wis. Stat. § 757.69(1)(b) (2007–08),[1] circuit court commissioners are granted specific statutory authority to issue search warrants. No challenge was made to the warrant except the contention that the circuit court commissioner was without lawful authority to issue it. Accordingly, the questions presented herein reduce to whether § 757.69(1)(b), which grants circuit court commissioners the power to issue search warrants, is unconstitutional.

---

[1] The search warrant at issue in this case was issued in 2008. All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

¶ 3. Throughout Wisconsin's history, including before the ratification of the Wisconsin Constitution, non-judges have been authorized by statute to issue search warrants. Therefore, we conclude that the issuance of a search warrant is not an exercise of "[t]he judicial power," as that phrase is employed in Article VII, Section 2 of the Wisconsin Constitution. Instead, issuance of a valid search warrant requires that the individual be authorized by law to issue the warrant, that he or she be neutral and detached, and that the warrant be issued only upon a showing of probable cause.

¶ 4. Because we also conclude that Wis. Stat. § 757.69(1)(b), which allocates the power to issue search warrants to circuit court commissioners, does not impermissibly intrude upon "[t]he judicial power" granted to the courts by Article VII, Section 2 of the Wisconsin Constitution, we hold that § 757.69(1)(b) is constitutional. Therefore, the circuit court commissioner's search warrant was validly issued.[2] Accordingly, we affirm the circuit court's denial of Williams' motion to suppress.

## I. BACKGROUND[3]

¶ 5. This matter began when officers from the Beloit Police Department, the Rock County Sheriff's Department, and the Wisconsin Department of Justice responded to a drug complaint at 2181 Shopiere Road in Beloit. The home was owned and occupied by Williams. Two Beloit police officers, Andrew G. Arnold and Rafael

[2] Because we so conclude, we need not reach the issue of whether the good faith exception would apply to allow admission of evidence obtained by the search warrant at issue.

[3] The underlying facts are not in dispute.

De La Rosa, made contact with Williams at his home, after which Williams granted verbal consent to the officers to view a marijuana growing operation inside the house.

¶ 6. While viewing the interior of the house, the officers observed numerous marijuana plants throughout the living area and the basement. However, when the officers sought written consent to search the premises, Williams refused. Officer Arnold then swore out an affidavit in support of a search warrant for Williams' residence, specifying the particular structures to be searched and the intended objects of the search.

¶ 7. Upon review of Officer Arnold's affidavit, a Rock County Circuit Court Commissioner issued a search warrant for Williams' residence and associated out-buildings and vehicles.[4] Officer Arnold and other officers then conducted the search, which returned 87 marijuana plants, various growing equipment and drug paraphernalia, cash, and several firearms. Williams was charged in Rock County Circuit Court with violations of Wis. Stat. § 961.41(1)(h)3 (manufacturing tetrahydrocannabinol [THC], 1,000–2,500 grams), § 961.42(1) (maintaining a drug trafficking place), and Wis. Stat. § 139.95(2) (dealer in possession of a controlled substance without a tax stamp).

¶ 8. Subsequently, Williams challenged the constitutionality of Wis. Stat. § 757.69(1)(b), which grants circuit court commissioners the power to issue search warrants. He asserted that issuing the search warrant was an invalid exercise of the judicial power under Article VII, Section 2 of the Wisconsin Constitution.

---

[4] Williams does not allege that there was any defect in the search warrant other than it was issued by a court commissioner.

196

Williams also filed a motion to suppress the evidence obtained upon execution of the search warrant. Williams alleged, in support of his earlier motion to suppress, that the issuance of the warrant was unconstitutional and that the evidence was therefore inadmissible. The Rock County Circuit Court heard argument and denied Williams' motions. The court held that the constitutional provisions at issue did not bar court commissioners from issuing search warrants, and that their issuance is a properly delegated ministerial task. The court also concluded that even if constitutional infirmities existed, the good faith exception would allow admission of the evidence obtained by execution of the warrant.

¶ 9. In accordance with a subsequently negotiated plea agreement, Williams pled no contest to the charge of manufacturing THC; the other two charges were dismissed. The court sentenced Williams to four years probation with six months conditional jail time, as well as forfeitures and costs. The court stayed Williams' incarceration pending appeal. Williams timely appealed. The court of appeals certified the appeal, and we accepted the certification.

## II. DISCUSSION

### A. Standard of Review

██

¶ 10. We are asked to interpret the meaning of "[t]he judicial power" under Article VII, Section 2 of the Wisconsin Constitution and to decide whether Wis. Stat. § 757.69 delineating court commissioners' powers is an unconstitutional vesting of the judicial power in court commissioners. The interpretation of the Wiscon-

197

sin Constitution and the determination of the constitutionality of statutes are questions of law that we review independently of the circuit court. *Milwaukee Journal Sentinel v. Wis. Dep't of Admin.*, 2009 WI 79, ¶ 14, 319 Wis. 2d 439, 768 N.W.2d 700.

¶ 11. In addition, statutes are presumed to be constitutional. *See State v. Cole*, 2003 WI 112, ¶ 11, 264 Wis. 2d 520, 665 N.W.2d 328. Therefore, when presented with a challenge to a statute's constitutionality, we will indulge every presumption to sustain the law and will resolve any doubt in favor of constitutionality. *See Soc'y Ins. v. LIRC*, 2010 WI 68, ¶ 27, 326 Wis. 2d 444, 786 N.W.2d 385. Accordingly, a party challenging the constitutionality of a statute faces a heavy burden and must show beyond a reasonable doubt that the statute violates the constitution in order to prevail. *See id.*

B. Statutory Authorization for Search Warrants

¶ 12. When interpreting statutes, we typically begin with the language chosen and "[i]f the meaning of the statute is plain, we ordinarily stop the inquiry." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110; *see Buse v. Smith*, 74 Wis. 2d 550, 568, 247 N.W.2d 141 (1976). Where statutory language is ambiguous, we may turn to extrinsic sources to aid our interpretation. *Kalal*, 271 Wis. 2d 633, ¶¶ 46–47.

¶ 13. We begin with the statutory provision that sets out the authority of circuit court commissioners, Wis. Stat. § 757.69. The relevant portion of that statute, § 757.69(1)(b), provides in part:

(1) A circuit court commissioner may:

. . .

> (b) In criminal matters issue summonses, arrest warrants or search warrants, determine probable cause to support a warrantless arrest, conduct initial appearances of persons arrested, set bail, inform the defendant in accordance with s. 970.02(1), refer the person to the authority for indigency determinations specified under s. 977.07(1), conduct the preliminary examination and arraignment, and, with the consent of both the state and the defendant, accept a guilty plea.

Upon examination of the words of the statute, we conclude that the language used is plain and that the statutory language provides for the issuance of search warrants by circuit court commissioners.

¶ 14. However, the primary question presented in this case is whether Wis. Stat. § 757.69(1)(b)'s authorization for court commissioners to issue search warrants impermissibly allows commissioners to exercise "[t]he judicial power," which Article VII, Section 2 of the Wisconsin Constitution vests in courts and, by necessary implication, the judges that serve as "courts." We begin our inquiry by examining the history of search warrants to determine whether, at the time of the drafting of the Wisconsin Constitution, the issuance of such warrants was understood to be part of the judicial power vested exclusively in courts. We then turn to the constitution's vesting of the judicial power and the assignment of certain powers to court commissioners.

C. General Principles of Constitutional Interpretation

¶ 15. When interpreting constitutional provisions and amendments, we look to intrinsic as well as extrinsic sources. *See Buse,* 74 Wis. 2d at 568. In particular,

we will look to the "plain meaning of the words in the context used"; the "historical analysis of the constitutional debates" relative to the constitutional provision under review; the prevailing practices in 1848 when the provision was adopted; and the earliest legislative interpretations of the provision as manifested in the first laws passed that bear on the provision. *Id.; see also Cole,* 264 Wis. 2d 520, ¶ 10. We also seek to ascertain what the people understood the purpose of the amendment to be. *See Cole,* 264 Wis. 2d 520, ¶ 10. In so doing, we give effect to the apparent understanding of the drafters and the people who adopted the constitutional provision under consideration. *See id.*

### D. History of Search Warrants

¶ 16. Our review of the history underlying search warrants begins with Article I, Section 11 of the Wisconsin Constitution,[5] which provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.[6]

---

[5] Williams does not assert a violation of Article 1, Section 11 or its federal counterpart, the Fourth Amendment. We nonetheless examine the prior interpretations of these provisions to help ascertain the meaning and purpose of search warrants.

[6] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon

¶ 17. We have previously examined the historical underpinnings of the warrant requirement of the Fourth Amendment of the United States Constitution, which demonstrate that the primary evil to which the warrant requirement was addressed was the issuance of general warrants. *See Custodian of Records for the Legislative Tech. Servs. Bureau v. State,* 2004 WI 65, ¶ 36, 272 Wis. 2d 208, 680 N.W.2d 792 (citing *Boyd v. United States,* 116 U.S. 616, 625 (1886)). General warrants were broad grants of investigative discretion to executive officers, and permitted nearly unrestrained searches of homes and persons, often by overly forceful means. *See id.* The adoption of the warrant requirement was intended to prohibit such unrestrained searches and to ensure that searching officers confine their efforts to those locations for which probable cause to search existed. *See* Thomas Y. Davies, *Recovering the Original Fourth Amendment,* 98 Mich. L. Rev. 547, 558 n.12 (1999). Therefore, the Fourth Amendment's warrant requirement and the prohibition of unreasonable searches and seizures were originally focused on the content and specificity of the warrant rather than on *who* was issuing the warrant.

¶ 18. As commentators on the Fourth Amendment warrant requirement have noted, early warrants often were issued by magistrates, such as justices of the peace, who were responsible for a variety of executive and quasi-judicial functions.[7] *See* David F. Forte, *Marbury's Travail: Federalist Politics and William*

---

probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[7] We use the term "quasi-judicial" to modify functions, power or authority that do not require the power of a court.

*Marbury's Appointment as Justice of the Peace,* 45 Cath. U. L. Rev. 349, 354 (1996). These magistrates were distinct from judges of courts of record in that magistrates generally did not possess formal legal training. *See id.* Notwithstanding this distinction, it was understood during the framing era that search warrants could be issued by these individuals exercising quasi-judicial authority. *See* Fabio Arcila, Jr., *In the Trenches: Searches and the Misunderstood Common-Law History of Suspicion and Probable Cause,* 10 U. Pa. J. Const. L. 1, 6 (2007).

¶ 19. In the early days of statehood, Wisconsin also had magistrates, such as justices of the peace, who were granted statutory authority to issue search warrants. *See* Edwin E. Bryant, *A Treatise on the Civil and Criminal Jurisdiction of Justices of the Peace, and the Powers and Duties of Constables in Executing Process in the State of Wisconsin* 939–42 (1884). This practice had prevailed prior to the adoption of the constitution and it continued by statute in post-constitutional enactments. *See id.* at 2. The primary limitations on these officers were that such officers could not issue warrants if the authority to do so was assigned exclusively to the local municipal courts, and that officers could issue warrants only upon a showing of "reasonable cause." *See id.* at 940.

¶ 20. Moreover, where the constitution granted these officers authority to exercise "judicial powers," the constitution also required that the legislature define and specify which powers the officers could exercise. *See id.* at 874–75, 939. Also relevant to the present inquiry, the history of justices of the peace in Wisconsin suggests that, like their historical counterparts, these magistrates were neither required nor expected to possess legal training. *See id.* at 1–7.

¶ 21. Accordingly, justices of the peace were not understood to exercise the same type of judicial power that judges, who were trained in the law and who sat as courts of record, could exercise. *See id.* at 28. Therefore, although the original Wisconsin Constitution provided that some judicial power was to be vested in justices of the peace, *see* Wis. Const. art. VII, § 2 (1848), such power was of a different sort than that vested in the judicial institutions of the state.[8] *See State ex rel. Perry v. Wolke,* 71 Wis. 2d 100, 106, 237 N.W.2d 678 (1976) (discussing that a judge may not act as a court until there is a delegation of judicial power to him to serve as part of the institution). Therefore, while magistrates charged by the Wisconsin Constitution with exercising "such judicial powers" were able to issue search warrants, their powers did not historically require the exercise of "[t]he judicial power" conferred on courts by Article VII, Section 2.

¶ 22. The issuance of warrants by non-judges also was addressed by the United States Supreme Court in *Shadwick v. City of Tampa,* 407 U.S. 345 (1972). In *Shadwick,* the Court examined a challenge to an arrest warrant issued by a municipal court clerk. The challenger asserted that issuance by someone other than a judge violated the Fourth Amendment's requirement that such warrants be issued by "judicial officers." *Id.* at 347–48. The Court concluded that the Fourth Amendment does not require that warrants be issued by a judge, or even someone trained in the law. *Id.* at 349–50. In so concluding, the Court examined the historical use of the term "magistrate" in the context of issuing warrants and determined that nothing in the Fourth

---

[8] At statehood, the Wisconsin Constitution provided that justices of the peace were elected officers, whose election was for two year terms. Wis. Const. art. VII, § 15 (1848).

Amendment or prevailing practice dictated that warrant-issuing officials be judges or even judicial officers. *See id.*

¶ 23. Instead, the Court held that the warrant requirement was intended to provide "an independent assurance that a search and arrest will not proceed without probable cause to believe that a crime has been committed and that the person or place named in the warrant is involved in the crime." *Id.* at 350. The requirement is not focused as much on whether the warrant is issued by a judge as it is on whether the issuer is "neutral and detached . . . and . . . capable of determining whether probable cause exists for the requested arrest or search." *Id.*

¶ 24. The Court emphasized that the purpose of warrants typically has not been to invoke the authority of the judicial branch so much as it has been to serve as a restraint on the executive power. *See id.* at 350–51. Accordingly, the neutral and detached determination of probable cause was a means of preventing unreasonable searches or seizures, rather than an end in and of itself. *See id.* Whether the officer issuing the warrant is denominated a "judicial officer," therefore, was not dispositive of his or her ability to issue a search warrant, which required only that the issuer be able to provide a neutral and detached determination that probable cause exists for the search at issue. *See id.* at 351; *see also* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.2(c), at 493 (4th ed. 2004) (quoting *Illinois v. Gates,* 462 U.S. 213, 235–36 (1983) ("[M]any warrants are—quite properly—issued on the basis of nontechnical, common-sense judgments of laymen.") (internal quotation marks omitted)).

¶ 25. Although *Shadwick* dealt specifically with an arrest warrant and the Fourth Amendment, rather than

a search warrant and an alleged unconstitutional exercise of the judicial power, the Court's reasoning is equally applicable in the context of Article I, Section 11 of the Wisconsin Constitution. At the time of the adoption of the Wisconsin Constitution, the legal norms prevailing across the nation were well-known to the delegates to the convention. *See generally Journal of the Convention to Form a Constitution for the State of Wisconsin* (1848) [hereinafter *Journal of the Convention*]. It is evident from the debates that the adoption of Article I, Section 11 was relatively uncontroversial, and its parallel with the Fourth Amendment has been affirmed by this court numerous times. *See, e.g., State v. Arias,* 2008 WI 84, ¶ 20, 311 Wis. 2d 358, 752 N.W.2d 748. By construing Article I, Section 11 as imposing requirements parallel to the protections afforded by the Fourth Amendment, we promote clarity in the law of search and seizure and provide straightforward guidelines to governmental officers who must apply our holdings. *See id.,* ¶¶ 20–21.

¶ 26. Therefore, we recognize that Article I, Section 11's warrant requirement has not mandated a determination of probable cause by a judge or a court of record. Non-judges who are "neutral and detached" and are able to ascertain whether probable cause exists have been expected to issue search warrants in the past, provided that they are authorized by statute to do so. Accordingly, issuance of a search warrant does not require an exercise of the judicial power that is vested exclusively in courts under Article VII, Section 2. Although issuing a search warrant may require some exercise of quasi-judicial power, it is something less than and distinguishable from the power vested in courts and elected judges.[9]

---

[9] As demonstrated by our inquiry into the scope of the judicial power below, there are many different functions that

## E. The Judicial Power

¶ 27. Having determined that the issuance of search warrants historically did not require the actions of a judge, we turn to an examination of the vesting of the judicial power in courts, and whether such vesting precludes the exercise of quasi-judicial functions by unelected officials, such as circuit court commissioners. As with our other inquiries here, our examination begins with the relevant text, Article VII, Sections 2 and 23 of the Wisconsin Constitution. Article VII, Section 2 provides:

> The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature . . . .

The provision in the Wisconsin Constitution pertaining to court commissioners' powers, Article VII, Section 23, was repealed in 1977. Prior to its repeal, Section 23 provided:

> The legislature may provide for the appointment of one or more persons in each organized county, and may vest in such persons such judicial powers as shall be prescribed by law. Provided, that said power shall not exceed that of a judge of a circuit court at chambers.

Wis. Const. art. VII, § 23 (repealed, 1977).[10]

---

bear on the administration of justice in which judges and other persons engage, but only certain of these functions require being vested with constitutional authority to finally adjudicate disputes between adverse parties. The issuance of a search warrant is not such a function.

[10] As may be noted, Article VII, Section 23 speaks of "persons" vested with such judicial powers. Although there is no

¶ 28. Williams points to the previous existence of Section 23 as proof that, subsequent to that section's repeal, court commissioners lack "such judicial powers" that Section 23 previously granted. He argues that circuit court commissioners who now issue search warrants impermissibly exercise "[t]he judicial power," which Article VII, Section 2 vests exclusively in courts and elected judges. *See* Wis. Const. art. VII, §§ 4(1), 5(2), 7. Therefore, Williams maintains, the search warrant issued for his home was invalid as an unconstitutional exercise of the judicial power by one who is not an elected judge.

¶ 29. Beginning with the plain language of the relevant constitutional provisions, we note the different phrasings of the term "judicial power" in Article VII, Sections 2 and 23. Section 2 refers to "*The* judicial power," which is vested in courts, whereas repealed Section 23 referred to "*such* judicial *powers*" that could be exercised by individuals other than courts. Therefore, on the face of the two provisions, there is a difference in the language used. We will construe the provisions so as to give reasonable meaning to those distinctions.

¶ 30. Next, we note that former Section 23's grant of authority was no greater than "such judicial powers" as could be exercised by a "judge of a circuit court at chambers." This provision is relevant to our present inquiry because the power of a judge at chambers was a limited power. As demonstrated by our early cases, discussed below, judges at chambers were not authorized to exercise the full extent of "[t]he judicial power" under Section 2.

specific mention of court commissioners in Section 23, early annotations for that section referred specifically to court commissioners, and by 1889, that section was officially labeled "Court commissioners."

¶ 31. The power of circuit court judges at chambers (and by implication, commissioners) was subject to legislative prescription. Accordingly, Section 23's judicial power could not have been equivalent to "[t]he judicial power" of Section 2 because equating the two would place the courts, and the people's access to the adjudication of disputes, at the discretion of the legislature. This result is not supported by the language or subsequent history of the relevant constitutional provisions, and must be rejected as anathema to the separation of powers implicit in our constitutional structure. *See State v. Washington,* 83 Wis. 2d 808, 825–26, 266 N.W.2d 597 (1978). Our interpretation is supported by records of the constitutional convention, contemporaneous understandings of the judicial power, legislative enactments immediately following the adoption of the constitution, and our early cases interpreting the relevant constitutional and statutory provisions.

¶ 32. Persons other than judges have been authorized to perform quasi-judicial functions since before the enactment of the Wisconsin Constitution. *See* Bryant, *supra,* at 1; *see also Faust v. State,* 45 Wis. 273, 276 (1878). During the convention of 1846, where delegates began the process of drafting the State's constitution, a provision similar to what would become Article VII, Section 23 was considered for inclusion. That provision read:

> The legislature shall have the power to vest in clerks of courts or in other competent persons authority to grant such orders and do such acts as may be deemed necessary for the furtherance of the administration of justice; but in all cases the powers thus granted shall be specified and determined.

Milo M. Quaife, *The Convention of 1846* 295 (1919). Although this provision was altered before its inclusion

in the final draft of the constitution, its presence in the draft demonstrates that the delegates were cognizant of the need for persons other than judges who could exercise certain powers of the judicial branch. Additionally, the discussions at the early convention illustrate that there existed a need for non-judge officers to expedite the business of the courts. For example, the initial draft of the constitution would have provided merely *five* circuit court judges, *see id.* at 502, so the clerks contemplated by the provision above could have performed quasi-judicial functions in the absence of a judge of a court of record.

¶ 33. In 1848, the constitutional convention at Madison adopted the first constitution of the State of Wisconsin. It appears from the limited records of the convention and the language of Article VII, Section 23 that that section was not intended to assign to those who were not judges the same powers as were assigned courts. Rather, Section 23 was intended to allow the legislature to assign such officers the more administrative tasks to be completed on behalf of the courts. *See Journal of the Convention,* at 420–21. However, Section 23 was included in the final draft of the Constitution, and there is no record of additional discussion, *compare id.* at 457 *with id.* at 613, so we look elsewhere for further understanding of its import.

¶ 34. Although the records of the debates of the convention are limited, it is evident from those records that the delegates to the convention and the respective committees were well-versed in the prevailing norms and the relevant terms of art at the time. *See generally Journal of the Convention.* Accordingly, in interpreting the use of the term "[t]he judicial power" in Article VII, Section 2, we look to common understandings of the term at the time of the adoption of the Wisconsin Constitution.

¶ 35. An obvious source to examine is the United States Constitution, which also explicitly vests "[t]he judicial power" in the Supreme Court, as well as in other inferior courts that Congress may establish. U.S. Const. Art. III, § 1; *see State v. Beno,* 116 Wis. 2d 122, 135–37, 341 N.W.2d 668 (1984) (acknowledging that the framers of the Wisconsin Constitution sought guidance from the federal Constitution).[11] Scholars have noted that there does not appear to be a clear statement as to the meaning of "[t]he judicial power" in the federal Constitution, but that many courts and academics have conceived of the principle as either directly analogous to, or closely related to, subject matter jurisdiction.[12] A conception of the term as analogous to jurisdiction is appealing, in that the Constitution provides that "[t]he judicial power shall extend to" those enumerated classes of cases and controversies listed in Article III, Section 2.

¶ 36. If we apply this concept to the Wisconsin Constitution, we see that Article VII, Section 2 vests "jurisdiction" in a unified court system. Jurisdiction has been interpreted to mean "the power to hear and determine the subject-matter in controversy in [a] suit before [a] court." *Riggs v. Johnson Cnty.,* 73 U.S. 166, 187 (1867). In this sense, analogy to the federal Constitution suggests that the judicial power is the power to hear and determine controversies between parties be-

---

[11] Those involved in drafting Wisconsin's Constitution also relied on the constitution of New York for guidance. *See State v. City of Oak Creek,* 2000 WI 9, ¶ 31, 232 Wis. 2d 612, 605 N.W.2d 526.

[12] *See* James S. Liebman & William F. Ryan, "*Some Effectual Power*": *The Quantity and Quality of Decisionmaking Required of Article III Courts,* 98 Colum. L. Rev. 696, 705 & n.39 (1998).

fore courts.[13] Under this theory, the judicial power is the ultimate adjudicative authority of courts to finally decide rights and responsibilities as between individuals. *Cf. State v. Van Brocklin,* 194 Wis. 441, 443, 217 N.W. 277 (1927).[14]

¶ 37. Our early cases construing judicial powers provide further guidance as to the varying nature of those powers and demonstrate that, in many instances, "such judicial powers" were subject to legislative assignment and limitation. One early case examined whether, under the relevant statutes, a court commissioner had the authority to punish for contempt of the commissioner's order. *See In re Remington,* 7 Wis. 541 (\*643) (1858). In *Remington,* this court examined the powers of commissioners under Article VII, Section 23 and, in particular, that section's limitation of a commissioner's power to that of a "judge of a circuit court at chambers." *See id.* at 551–55 (\*653–58). The court recognized that the power of circuit court judges at chambers was subject to legislative modification and concluded that the scope of commissioners' powers was narrower than the powers afforded a circuit court judge at chambers. *See id.* at 552–55 (\*654–57). Where chambers' powers were expanded without an express expan-

---

[13] *See Marbury v. Madison,* 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule.").

[14] Another court has stated that the powers that must be vested solely in courts are those that are "necessary to exercise the jurisdiction of the court" or those whose diminishment or assignment would "abridge judicial powers or interfere with judicial independence." *State v. Umezulike,* 866 So. 2d 794, 801 (La. 2004).

sion of commissioners' powers, the commissioners' powers would not be presumed to expand.[15] *Id.* at 554–55 (*656–58).

¶ 38. Our cases construing judicial powers and their exercise by persons other than judges demonstrate that just ten years after the adoption of Article VII, Section 23, it was established law that commissioners' powers were subject to modification by the legislature, *In re Kindling,* 39 Wis. 35, 49–51 (1875), and that powers not specifically granted would not be imputed to commissioners, *Perry,* 71 Wis. 2d at 106. Therefore, the authorization for "persons," here, court commissioners,

---

[15] Similarly, in an early general treatise on pleading and practice, David Graham, *Treatise on the Practice of the Supreme Court of the State of New-York* 26–28 (2d ed. 1836), it is noted that the powers of a court commissioner, whose powers extended (at most) to those of a judge at chambers, were dependent entirely on legislative grants of authority.

Another early Wisconsin case, *In re Kindling,* 39 Wis. 35, 46–50 (1875), provides substantial support for an understanding of judicial power as having different meanings under different circumstances. The court distinguished between *the* judicial power, which is vested solely in constitutionally established courts, and those judicial powers that could be legislatively conferred on other officers or on judges when they were not acting as a court. *See id.* at 58–59.

Also, in *Kindling,* counsel for the petitioner stated that the power of a judge at chambers was understood at common law to extend to "the making of such rules or orders as are necessary to speed the causes pending in court, clear away the technical obstacles, and thus enable the court to come more speedily to a hearing of the merits of the causes." *Id.* at 47–48. Specifically, counsel noted that, at common law, the power of a judge at chambers was "preparatory to an exercise of judicial power, that is, the determination of the rights of the parties on the merits of the case." *Id.* at 48. This understanding seemed to be confirmed by the court. *Id.* at 60–61.

to exercise "such judicial powers" under Article VII, Section 23 was not intended to invest in commissioners the same type of authority as "[t]he judicial power" set out in Article VII, Section 2, which is not subject to legislative prescription.

¶ 39. Later, in *Faust,* we again reaffirmed the statutory foundation required for commissioners' authority.[16] In *Faust,* a criminal defendant asserted that the issuance of the warrant for his arrest and his preliminary examination were invalid as having been undertaken by a court commissioner who was without constitutional or statutory authority to do so. *Faust,* 45 Wis. at 275–76. In upholding the commissioner's actions, we relied largely on the legislature's explicit grant of such authority in Wis. Stat. ch. 176, § 1 (1858). *Id.*

¶ 40. We also emphasized that before the adoption of our state constitution, the 1839 statutes "conferred this power [to issue a warrant] upon the judges of the

---

[16] After our early cases explaining the statutory foundation for court commissioners' powers as being limited to those of a judge at chambers, we continued to construe commissioners' powers within the constraints of the governing statutory provisions. *See, e.g., Potter v. Frohbach,* 133 Wis. 1, 6–7, 112 N.W. 1087 (1907); *see also Wis. Indus. Sch. for Girls v. Clark Cnty.,* 103 Wis. 651, 662, 79 N.W. 422 (1899) (concluding that the "term 'judicial power,' which, by sec. 2, art. VII, of the constitution, is limited to courts, was clearly intended to cover powers similar to those which were exercised by courts in the trial of causes prior to the constitution, not matters of mere judicial administration, or those things of a judicial nature which had previously been exercised by a judge at chambers"); *Anonymous,* 8 Wis. 190 (*388), 191 (*389) (1859) (This case was uncaptioned, but is appended with an explanation that the opinion was found among the papers of the late Chief Justice Edward V. Whiton, and that publication was warranted due to "[t]he importance of the point decided." *Id.* at 190 (*388).

213

courts of record in the territory, to be exercised both in term time and in vacation. This power of arrest and examination of offenders by process issued by the judges of the courts of record in vacation, was a known power . . . ." *Id.* at 276. Recognizing that the constitution had not withdrawn this authority, we held that the provision of those powers of judges at chambers to court commissioners was valid, as was the commissioner's exercise of the assigned powers. *Id.*

¶ 41. Two subsequent cases provide substantial guidance in our understanding of the nature of judicial power and the exercise of such powers by persons other than judges. First, in *State v. Kriegbaum,* 194 Wis. 229, 215 N.W. 896 (1927), we were called upon to examine the validity of a search warrant issued by a justice of the peace and executed upon the person of the defendant. *Id.* at 231. As with court commissioners, the authority of justices of the peace was grounded in statute and, therefore, they did not possess any powers not expressly granted by statute. *Id.* at 231–32. The statutes at that time authorized justices of the peace to issue warrants for searches of houses or other places, but not for searches of persons. *Id.* at 232. From that exclusive statutory enumeration, we concluded that the statutory authority of justices of the peace did not extend to issuing warrants for the search of persons. *See id.*

¶ 42. The same year we decided *Kriegbaum,* we also decided *Van Brocklin,* which involved a challenge to the authority of a clerk of court to issue a search warrant. In holding that clerks were authorized to issue search warrants, we relied on the statutory grant of power, as well as the distinction between different uses of the phrase "judicial power" in the constitution and statutes. *See Van Brocklin,* 194 Wis. at 443–47. We related a definition of the judicial power that is vested

214

exclusively in courts as "the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision." *Id.* at 443 (internal quotation and citation omitted). This power was distinguished from quasi-judicial power that was not vested solely in courts and could be exercised by individual judges and other officials when a statute permitted it. *Id.* at 444. The power to issue search warrants, which the clerk of court was permitted to employ due to legislative enactment, fell within the class of quasi-judicial functions that could be exercised by individuals, including non-judges. *Id.* at 447. Accordingly, we held that the search warrant was valid. *Id.* at 448.

¶ 43. Due to the constitutional permission granted to the legislature to vest in individual officers certain quasi-judicial powers and the exercise of the powers of a judge at chambers under common law, we conclude that "such judicial powers," as described in Wis. Const. art. VII, § 23 (repealed, 1977), cannot be equivalent to "[t]he judicial power" expressed in Article VII, Section 2, which the constitution vests in the courts of the State.

¶ 44. The constitutional vesting of the judicial power in the courts of the State does not exhaust all powers that may appear judicial, nor require that they be exercised by an elected official. For example, while the constitution vests the judicial power in specified courts, the constitution also contemplates unelected officers exercising a type of judicial power. Specifically, Article VII, Section 2 provides that the judicial power shall be vested in municipal courts "if authorized by the legislature."

¶ 45. Chapter 755 of the statutes authorizes the creation of municipal courts. Wisconsin Stat. § 755.02

requires that municipal judges be elected. However, no constitutional provision requires the election of municipal judges. *See* Wis. Const. art. VII, §§ 2, 14. Therefore, were it not for § 755.02, municipal judges could exercise "[t]he judicial power" granted under Article VII, Section 2 without being elected. Stated otherwise, the constitutional authority to exercise the judicial power in a municipal court is not dependent upon being an elected judge. Accordingly, the nonelected status of circuit court commissioners does not create a constitutional impediment to their statutory authority to issue warrants.

### F. 1977 Amendments

¶ 46. Prior to the adoption of the 1977 constitutional amendments, Article VII, Section 23 circumscribed the authority of the legislature, so that the legislature could not assign to court commissioners more power than was allowed to a circuit court judge at chambers under the common law at the time of the constitution's ratification. In the absence of such prescriptions, however, it could be argued that the legislative power is more broad; indeed, "the power of the state legislature, unlike that of the federal congress, is plenary in nature." *State ex rel. McCormack v. Foley,* 18 Wis. 2d 274, 277, 118 N.W.2d 211 (1962). Therefore, provisions in the Wisconsin Constitution serve mainly as brakes on the power of the legislature, which may otherwise "exercise all legislative power not forbidden by the constitution or delegated to the general government, or prohibited by the constitution of the United States." *Id.* (quoting *Bushnell v. Beloit,* 10 Wis. 155 (*195), 168–69 (*225) (1860)). Further restriction on the legislature's authority to act may be implied from the separation of powers between the branches of

government. *See Washington,* 83 Wis. 2d at 826 n.13. With these principles in mind, we turn to the constitutional amendments of 1977 and, in particular, the repeal of Article VII, Section 23.

¶ 47. In 1977, after many years[17] of consideration and study of the Wisconsin court system, the legislature passed 1977 S.J.R. 7, which authorized a vote by the citizens on sweeping changes to the State's judicial structure. In addition to creating the intermediate court of appeals and unifying the county courts and circuit courts, the amendment repealed Article VII, Section 23, which related to vesting of "such judicial powers" in court commissioners.

¶ 48. In the early 1970s, when the legislature seriously began to consider amending the constitutional provisions relating to the courts, the primary concerns had been the efficiency of the State's courts and the promotion of uniformity within the court system. *See* Robert J. Martineau, "Judicial Reform in Wisconsin: Some More Lessons for Reformers," *in Court Reform in Seven States* 87, 88 (Lee Powell ed. 1980). In 1971, in response to urgings by Chief Justice Hallows, Governor Lucey created the Citizens Study Committee on Judicial Organization, to study the court system's most pressing needs. *Id.* at 88–89. After nearly two years of meetings, hearings, and research, the Committee submitted a final report to the governor. *See id.* at 89. That report made numerous recommendations regarding court structure, administration, and efficiency. *See id.*

---

[17] *See, e.g.,* Wisconsin Legislative Joint Committee on Investigation of the Courts, *Report of Joint Committee of the Legislature of Wisconsin on Investigation of the Organization and System of the Courts in Wisconsin* 5 (1915) (urging that "every step taken in the future should be rather along the line of simplifying the court system and making the same flexible").

¶ 49. Relevant to our present inquiry, the Citizens Study Committee recommended that the use of personnel other than judges be expanded in any judicial structure that would be developed. *See* Citizens Study Committee on Judicial Organization, *Report to Governor Patrick J. Lucey* 216–21 (1973). The report focused on the wide array of tasks performed by judges on a daily basis that "do not require performance by an individual with full judicial training." *Id.* at 217. Noting the prevalence of "lay judges" throughout the development of the common law, the report discussed the roles of these nonlawyer officials who had long been vested with authority to issue search and arrest warrants, set bail, and conduct preliminary hearings, among other duties. *Id.*

¶ 50. The Citizens Study Committee report concluded that court commissioners, who, in Wisconsin, are required to be licensed attorneys, were not being utilized to their full potential. For certain duties, the committee envisioned court commissioners as off-hours judicial substitutes, especially in the context of pre-trial criminal procedure. *See id.* at 220. As a means of expanding the use of court commissioners, the report recommended that commissioners be placed under the authority of the State (rather than counties) and that their duties be expanded beyond what was then authorized, to the greatest extent allowed by the supreme court, which would oversee court commissioners. *See id.* at 219.

¶ 51. The Report of the Citizens Study Committee became the blueprint for the legislative plans for court reorganization. *See* Martineau, *supra* at 89. In the early stages of proposed court reorganization, the committee's recommendations regarding court commissioners did not suggest repeal of the constitutional

218

provision relating to court commissioners' powers. For example, an initial 1975 version of the proposed amendments did not contemplate any change to Article VII, Section 23. *See* Drafting File for 1975 A.J.R. 11, *Analysis by the Legislative Reference Bureau,* Legislative Reference Bureau, Madison, Wis.

¶ 52. Soon after the initial drafts, however, Article VII, Section 23 was slated for repeal in every subsequent draft of the resolution that would become the basis for the 1977 judicial reorganization amendments. In each draft, the drafter's note accompanying Section 23 remained the same, providing that "[t]he section authorizes the legislature to create an appointive office of county court commissioner. The constitutional authorization is repealed; the office continues under statute law (e.g. section 252.14)." *Id.* After numerous drafts proposing this treatment of Section 23, the legislature passed 1977 S.J.R. 7, approving the proposed amendments for the second time.[18] The questions of court reorganization were then put to the people of Wisconsin, who approved the amendments in April 1977.

¶ 53. Although the questions presented to voters focused on the broader issues of court unification and reform without asking specifically about the repeal of Article VII, Section 23, relating to court commissioners' powers, contemporaneous legislative and media reports provide insight into the concerns and considerations facing voters. These sources support the conclusion that the amendments were intended to maintain the validity of court commissioners' exercise of their statutory powers. For example, many newspaper reports

---

[18] The Wisconsin Constitution requires that a proposed constitutional amendment be passed by two consecutive legislatures before being presented to the people for ratification. Wis. Const. art. XII, § 1.

during the amendment process focused on the congestion of the courts and the need for measures to improve administrative efficiency, with some reports noting the beneficial effect that expanded use of court commissioners could have. *See, e.g.,* Anita Clark, *County Courts Bogged Down,* Wis. State J., April 17, 1977, at 8.

¶ 54. Similarly, informational memoranda relating to the proposed amendments and published by the Wisconsin Legislative Council recommended that commissioners' powers should continue undiminished, or even be expanded, after repeal of Article VII, Section 23. One memorandum notes that the repeal of certain obsolete provisions, including Section 23, would have the effect of "allowing the Legislature and Supreme Court greater flexibility to deal with the issues of court finance, calendaring of actions and parajudicial personnel in the future." Wisconsin Legislative Council, *Summary and Analysis of 1975 Enrolled Joint Resolution 13 Relating to the State Court System* 6 (1976). Another later memorandum reaffirmed the broad powers that court commissioners held, even in light of the people's repeal of the constitutional provision relating to commissioners' exercise of "such judicial powers." *See* Wisconsin Legislative Council, Information Memorandum 78–8, *Powers and Duties of Family Court Commissioners* 2 (April 13, 1978).

¶ 55. Although these reports provide a glimpse into the legislative and public conceptions of the effect of the 1977 amendments, an even clearer picture of how those amendments were understood can be found in the legislative enactments immediately following adoption of the amendments. Provisions enacted by the 1977–78 legislature expanded the powers of court commissioners to include duties not previously described. For example, chapter 323, section 13, Laws of 1977, created Wis. Stat.

§ 757.69, which included authorization for commissioners to preside at initial appearances, hear petitions for mental health commitments, and conduct uncontested probate proceedings, in addition to many other duties. We have recognized that early legislative enactments following the passage of a constitutional provision provide guidance in interpreting the meaning of that provision. *See Buse,* 74 Wis. 2d at 568. Therefore, this near-simultaneous expansion of court commissioner powers lends support to the validity of the continuing exercise of those powers.

¶ 56. Accordingly, in light of the widely recognized need for court reform leading up to the 1977 amendments, the people's adoption thereof, and the legislature's near-immediate vesting of broad efficiency-promoting duties in court commissioners, we conclude that the repeal of Article VII, Section 23 did not diminish the role or authority of court commissioners. Therefore, we construe the 1977 amendments and the subsequent legislative enactments to give effect to the expressed will of the people in repealing Section 23. *See Cole,* 264 Wis. 2d 520, ¶ 10. To that end, we conclude that Wis. Stat. § 757.69(1)(b)'s vesting in court commissioners of the authority to issue search warrants did not contravene provisions of the Wisconsin Constitution at the time of the 1977 amendments, and it does not do so today.

¶ 57. Stated otherwise, the legislative empowerment of court commissioners pursuant to Wis. Stat. § 757.69(1)(b) does not constitute an unconstitutional delegation of "[t]he judicial power" of the courts. As discussed previously, there are many quasi-judicial functions that bear on the efficient administration of

justice, and those duties may by legislative assignment be undertaken by court commissioners.[19]

¶ 58. From the foregoing, we conclude that the search warrant issued for Williams' home was valid. Williams has not asserted that the search warrant was deficient in any aspect, except that it was issued by a court commissioner. Because we conclude that commissioners have been validly authorized to issue such warrants under Wis. Stat. § 757.69(1)(b), we find no reason to overturn the warrant. As we have noted, Williams faced a substantial burden in asserting that § 757.69(1)(b) is an unconstitutional exercise of legislative authority, and he has failed to meet that burden.

## III. CONCLUSION

¶ 59. Throughout Wisconsin's history, including before the ratification of the Wisconsin Constitution, non-judges have been authorized by statute to issue search warrants. Therefore, we conclude that the issuance of a search warrant is not an exercise of "[t]he judicial power," as that phrase in employed in Article VII, Section 2 of the Wisconsin Constitution. Instead, issuance of a valid search warrant requires that the individual be authorized by law to issue the warrant, that he or she be neutral and detached, and that the warrant be issued only upon a showing of probable cause.

¶ 60. Because we also conclude that Wis. Stat. § 757.69(1)(b), which allocates the power to issue search warrants to circuit court commissioners, does not impermissibly intrude upon "[t]he judicial power" granted to the courts by Article VII, Section 2 of the

---

[19] Because we decide based on the applicable statutes, we do not reach the issue of whether a circuit court possesses inherent authority to delegate judicial powers.

Wisconsin Constitution, we hold that § 757.69(1)(b) is constitutional. Therefore, the circuit court commissioner's search warrant was validly issued. Accordingly, we affirm the circuit court's denial of Williams' motion to suppress.

*By the Court.*—The judgment and order of the circuit court is affirmed.

¶ 61. ANN WALSH BRADLEY, J., and DAVID T. PROSSER, J., did not participate.

¶ 62. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). The instant case requires the court to determine whether one aspect of Wis. Stat. § 757.69(1)(b), namely the language that grants court commissioners authority to issue search warrants, is an unconstitutional delegation of judicial power violating Article VII, Section 2 of the Wisconsin Constitution. The court is not asked to decide, and does not decide, whether all the powers of court commissioners set forth in Wis. Stat. § 757.69(1)(b) or in § 757.69 are constitutional.[1]

¶ 63. The question before the court is whether a court commissioner's issuance of a search warrant is the exercise of judicial power in violation of the Wisconsin Constitution.

---

[1] Wisconsin Stat. § 757.69(1)(b) provides as follows:

Powers and duties of circuit court commissioners. (1) A circuit court commissioner may:

. . . .

(b) In criminal matters issue summonses, arrest warrants or search warrants, determine probable cause to support a warrantless arrest, conduct initial appearances of persons arrested, set bail, inform the defendant in accordance with s. 970.02(1), refer the person to the authority for indigency determinations specified under s. 977.07(1), conduct the preliminary examination and arraignment, and, with the consent of both the state and the defendant, accept a guilty plea. . . .

¶ 64. Article VII, Section 2 vests judicial power in specified courts, not in court commissioners. To determine the constitutionality of the legislature's authorizing court commissioners to issue search warrants under Wis. Stat. § 757.69(1)(b), we must interpret the meaning of the phrase "judicial power" used in Article VII, Section 2 of the Wisconsin Constitution.

¶ 65. In interpreting a constitutional provision, the court ordinarily turns to three sources: the words in the constitutional provision in the context used; the constitutional debates and practices in existence at the time of the adoption of the constitutional provision; and the earliest interpretation of the constitutional provision by the legislature as manifested in the first law passed following adoption.[2] This list of sources for or approaches to constitutional interpretation is not exhaustive.

¶ 66. To answer the question presented I look to the three sources and turn first to the text of the Wisconsin Constitution. Article VII, Section 2, as revised in 1978, provides:

> The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature . . . . [3]

¶ 67. A court commissioner is not one of the entities in which the judicial power of this state vests

---

[2] *State v. Beno,* 116 Wis. 2d 122, 136–37, 341 N.W.2d 668 (1984).

[3] Article VII, Section 2 embodies the separation of powers principles inherent in the Constitution that protect each branch of government from incursion by the others.

under Article VII, Section 2. Court commissioners do, however, appear in legislation as early as 1849. Wis. Stat. ch. 10, § 75 (1849). "Judicial power" is not defined in the constitution.

¶ 68. Prior iterations of Article VII, Section 2 similarly did not define "judicial power" or vest it in court commissioners. From 1848 until 1966, Article VII, Section 2 provided in relevant part as follows:

> The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts, courts of probate, and in justices of the peace. The legislature may also vest such jurisdiction as shall be deemed necessary in municipal courts, and shall have the power to establish inferior courts in the several counties . . . .

¶ 69. In 1966, Article VII, Section 2 was amended to delete justices of the peace from the list of entities in which the judicial power of the state is vested, among other changes. From 1966 until 1977, Article VII, Section 2 provided in relevant part as follows:

> The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts, and courts of probate. The legislature may also vest such jurisdiction as shall be deemed necessary in municipal courts, and may authorize the establishment of inferior courts in the several counties, cities, villages or towns, with limited civil and criminal jurisdiction. . . .

¶ 70. "Judicial power," as used in any version of the Wisconsin Constitution, has not been clearly defined. Nothing in any of the versions of the Wisconsin Constitution or in the drafting history of the 1848, 1966, or 1978 iterations of Article VII, Section 2 sheds light on the meaning of "judicial power" or on whether

225

the meaning of "judicial power" has changed with the amendments to Article VII, Section 2.

¶ 71. While the text and history of Article VII, Section 2 provide little insight into whether issuing a search warrant is part of the constitutional concept of "judicial power," other constitutional provisions are more availing. It is difficult to define "judicial power," but determining, on the basis of other constitutional provisions and historically accepted practices, that certain acts are not part of the constitutional concept of "judicial power" may be a more manageable task.[4]

¶ 72. I agree with the majority that the history of the warrant requirement found in Article I, Section 11 and the closely analogous Fourth Amendment of the federal constitution is relevant to deciding the present case. Nothing on the face of Article I, Section 11 or the Fourth Amendment or the history of these provisions requires a search warrant to be issued by a decision maker vested with "judicial power" as that phrase is used in Article VII, Section 2.

¶ 73. The Wisconsin Supreme Court and the United States Supreme Court have both concluded that an *arrest* warrant may be issued by a non-judge, pro-

---

[4] The parties attempt to define the constitutional concept of "judicial power." The defendant argues that a court commissioner exercises judicial power when he or she "determines operative facts or draws legal conclusions that alter a party's property or liberty, even pending later review."

The amicus curiae brief of the Wisconsin Association of Judicial Court Commissioners and the Wisconsin Family Court Commissioners' Association, Inc., asserts that court commissioners do not perform "core judicial functions because their acts are subject to de novo review by circuit court judges." The defendant counters, saying that the very nature of a search warrant precludes pre-deprivation review.

vided the issuer is neutral and detached and capable of determining the existence of probable cause.[5]

¶ 74. With regard to *search* warrants, Wisconsin statutes provided that magistrates may issue search warrants, without defining the word "magistrate."[6] "Non-judge magistrates" apparently issued search warrants.[7] But it is not entirely clear from the statutes or cases whether court commissioners were authorized to, or did in fact, issue search warrants prior to the enactment of Wis. Stat. § 757.69(1)(b). Although several Wisconsin statutes authorize a court commissioner to issue *arrest* warrants, on a cursory examination of several pre-1978 statutes, I could find no statute that explicitly authorizes a court commissioner to issue *search* warrants.[8] If court commissioners were, in fact,

---

[5] *See, e.g., Shadwick v. City of Tampa,* 407 U.S. 345, 349 (1972) (holding that a Florida statute authorizing clerks of municipal courts to issue certain arrest warrants did not violate the Fourth Amendment); *State ex rel. White v. Simpson,* 28 Wis. 2d 590, 597, 137 N.W.2d 391 (1965) (holding that a district attorney could not satisfy the Fourth Amendment's requirement that arrest warrants be issued by a neutral and detached magistrate); *Bianchi v. State,* 169 Wis. 75, 171 N.W. 639 (1919) (holding that the clerk of municipal court was authorized to issue an arrest warrant).

[6] *See, e.g.,* Wis. Stat. 1915 § 4839; Wis. Stat. 1923 §§ 4839, 4840.

[7] *See, e.g., State v. Van Brocklin,* 194 Wis. 441, 217 N.W. 227 (1922) (search warrant issued by clerk of a municipal court).

[8] Nevertheless, statutes prior to 1978 might be interpreted as authorizing court commissioners to issue search warrants. For example, Wis. Stat. § 954.01(1) (1965) authorized a court commissioner and others to issue arrest warrants and stated that a court commissioner falls within the word "magistrate" "as that word is used in chapters 954–963" of the Wisconsin Statutes. Section 963.01, which appeared in Chapter 963, in

227

issuing search warrants prior to 1978, it is important for us to determine whether their authority to do so was dependent on the now-repealed Article VII, Section 23 of the Wisconsin Constitution, to which I now turn.

¶ 75. Prior to the 1978 constitutional amendments, Article VII, Section 23 authorized the legislature to vest persons in each county with such judicial powers as do not exceed that of a judge of a circuit court at chambers. Article VII, Section 23 provided as follows:

> The Legislature may provide for the appointment of one or more persons in each organized county, and may vest in such persons such judicial powers as shall be prescribed by law. Provided that said powers shall not exceed that of a judge of a circuit court at chambers.

¶ 76. This constitutional provision does not explicitly mention court commissioners. The original version of Section 23 did not contain the caption "Court Commissioners." This caption was later added by the Reviser of Statutes. *See* 1889 Statutes Annotated.

¶ 77. Regardless of whether Section 23 is directed to court commissioners, it is not clear what are (or were) the powers of "a judge of a circuit court at chambers," as that phrase is used in Section 23.[9] Sev-

---

turn, provided that "[a] search warrant may be issued by any magistrate who is authorized to issue a criminal warrant." Piecing these provisions together, it appears court commissioners may have had statutory authority to issue search warrants. Additionally, at least one pre-1978 case refers to a court commissioner issuing a search warrant. *See State ex rel. Bena v. Crosetto,* 73 Wis. 2d 261, 263, 243 N.W.2d 442 (1976).

[9] Judge Harry S. Fox, in his article entitled *Duties of a Court Commissioner,* Wis. Bar Bull. Feb. 1957, at 9, noted that he had "found no satisfactory definition of those powers [namely powers of a judge of a circuit court at chambers], although the

eral statutes explicitly referred to a judge of a circuit court at chambers.[10] The State's brief asserts that a judge of a circuit court at chambers did not exercise the full judicial power constitutionally vested in courts.

¶ 78. In other words, according to the State, a judge of a circuit court at chambers exercised some but not all constitutional "judicial power." Thus, the text of Article VII, Section 23 might lead one to conclude that the legislature was authorized to vest some judicial powers in one or more persons who were not judges, and accordingly vested certain powers in court commissioners. The statutes empowering court commissioners do not refer to the Wisconsin Constitution. I therefore do not know whether the legislature considered these statutes as governed by Article VII, Section 23 of the Wisconsin Constitution.

¶ 79. I get some guidance from *State v. Van Brocklin*, 194 Wis. 441, 447, 217 N.W. 227 (1927), in which the court determined that "the authorities . . . indicate that it is not generally considered that the issuance of a criminal warrant involves the exercise of that judicial power which the Constitution commits to the exclusive

---

distinction is generally recognized." *See also In re Potter,* 133 Wis. 1, 2, 112 N.W. 1087 (1907) (putting forth a broad definition of the powers of a judge of a circuit court at chambers that would allow the judge, especially by legislative authority, to exercise at chambers "any power not requiring the trial of an action, strictly so called").

[10] *See, e.g.,* Wis. Stat. § 269.29 (1957) ("Except as so provided or otherwise expressly directed a county judge or court commissioner may exercise within his county the powers and shall be subject to the restrictions thereon of a circuit judge at chambers but such orders may be reviewed by the court. . . .); *Clapp v. Preston,* 15 Wis. 543 (1862) (discussing R.S. ch. 132, § 28, which empowered a "circuit judge at chambers to render judgment upon a frivolous demurrer").

jurisdiction of courts . . . ." Although the *Van Brocklin* court ultimately rested its decision to uphold the issuance of the search warrant by the clerk of a municipal court on Article VII, Section 23, the court's reasoning suggests that even in the absence of Article VII, Section 23, the court might have upheld the power of a municipal court clerk to issue a search warrant.[11]

[11] Justice Eschweiler, joined by Justice Crownhart, issued a well-reasoned dissent in *Van Brocklin.* These justices distinguished an arrest warrant from a search warrant and furnished the following interesting information about court commissioners, justices of the peace, and Article VII, Section 23:

> It has never heretofore been even suggested that such section 23, Article 7, has ever been looked to in support of judicial power other than that in the creation of the well-known and long-established office of court commissioner. The very guarded exercise heretofore of this power to create such subordinate judicial office is quite indicative of the idea that the Legislature has had a consistent theory favoring a very restrictive use of such grant or source of power. The number of such officers has always been expressly limited, viz. originally by section 75, ch. 10, R. S. 1849, one to the county, by amendment thereafter, up to six per county, except in counties having more than one circuit judge (section 252.14); express statutes give county judges the power of court commissioners (Laws of 1848, p. 23, § 18; section 252.16); so also as to special municipal courts (chapter 651 of 1907, section 2523—8, Stats. of 1911); no inferior courts, such as a municipal court like the one here in question appears to have ever had the power to appoint such; their powers are expressly defined (section 252.15); their fees regulated (section 252.17); no illustration is afforded of any single prior instance in the state's history where it has been asserted or claimed that said section 23, Article 7, Const., supra, has been considered as a legislative source of power for any other office or officer than court commissioner.

> That even such an officer as justice of the peace, of constitutional recognition and dignity, takes nothing by implication, has been the rule from first to last in this state: *Cox v. Groshong* 1 Pin. 307, 312 (1843); *State v. Kriegbaum,* [194 Wis. 229], 215 N.W. 896 (1927), and would seem to require a holding that power to issue a "warrant" (for so the law here reads) does not carry with it the

230

¶ 80. In 1978, Article VII, Section 23 was repealed. No full, ready explanation for the repeal of Article VII, Section 23 can be found in the history of the 1978 amendment of Article VII. On the one hand, as the defendant argues, the repeal might lead one to conclude that the legislature was no longer constitutionally able to vest some judicial powers in persons who were not judges. On the other hand, as the State argues, the limited material available indicates that the repeal might be interpreted as giving the legislature greater flexibility to vest more power in the office of court commissioner.[12]

power to perform the judicial and twofold duties required for *search* warrants—the one process that is fettered by two constitutional provisions.

In a relatively recent case, the Supreme Court of Utah agreed with the dissent in *Van Brocklin* rather than with the majority. *See State v. Thomas*, 961 P.2d 299, 303 (Utah 1998) ("[B]ecause a search warrant is an order and the issuer possesses the authority to enforce the order, the issuance of a search warrant is a core judicial function, which commissioners lack the authority to perform.").

[12] *See, e.g.,* Resource Material on Court Reorganization, vol. I, Wisconsin Legislative Council Staff Information Memorandum 76–2 at 6 (1976–77) ("The amendment also repeals constitutional provisions relating to suit tax, terms of court and court commissioners, thereby allowing the Legislature and Supreme Court greater flexibility to deal with the issues of court finance, calendaring of actions and parajudicial personnel in the future."); Drafting Files, 1975 Joint Resolution 13 and 1977 Joint Resolution 7, Legislative Reference Bureau, Madison, Wis. ("The section [23] authorizes the legislature to create an appointive office of county court commissioner . . . [t]he constitutional authorization is repealed; the office continues under statute law (e.g. [then] section 252.14."); Citizens Study Committee on Judicial Organization, Report to Governor Patrick J. Lucey at 217–219 (Jan. 1973) (discussing the advantages of

¶ 81. I therefore turn to a third source for interpreting the constitution, namely, the earliest interpretation of the constitutional provision by the legislature as manifested in the first law enacted following adoption of the 1978 constitutional amendments. The legislative enactments at the time of the adoption of the 1978 constitutional amendment of Article VII included Wis. Stat. § 757.69(1)(b). Rather than reduce the power of court commissioners in light of the repeal of Article VII, Section 23, the legislature expanded the powers of court commissioners and explicitly included the power to issue search warrants.

¶ 82. While not determinative of the interpretation of the constitution or the constitutionality of a statute, the legislative interpretation of an amended constitutional provision through a contemporaneous statutory enactment is instructive. In the present case, the combination of the historically accepted practice of non-judges issuing search warrants and the contemporaneous legislative enactment Wis. Stat. § 757.69(1)(b) following the repeal of Article VII, Section 23, persuades me that the majority reaches the correct result.

¶ 83. Relying too heavily on contemporaneous legislative action would be ill-advised in all instances because this court, not the legislature, is the final arbiter of the meaning of the Wisconsin Constitution. Nevertheless, in the present case dealing specifically with the power of court commissioners to issue search warrants under Wis. Stat. § 757.69(1)(b), there is more to support the court's conclusion about this power of court commissioners than just a contemporaneous legislative enactment.

utilizing court commissioners to perform a wider range of tasks and concluding that the "system of court commissioners, as parajudicial personnel, should be retained . . . ").

¶ 84. After examining the history of the texts of Article VII, Sections 2 and 23; Article I, Section 11; the numerous cases in which non-judges issued warrants;[13] and the Wisconsin legislative enactments vesting search warrant authority in persons who were not judges both prior to and after 1978, I conclude, like the majority, that historically the issuance of search warrants has not been viewed as an exercise of a judicial power that the state constitution commits to the exclusive jurisdiction of courts and that the repeal of Article VII, Section 23 in 1978 did not eliminate the Wisconsin legislature's power to authorize court commissioners to issue search warrants.

¶ 85. I appreciate the majority's attempt to research constitutional history to answer the question presented. History is relevant in constitutional interpretation. However, its use poses challenges. We have relatively little historical study of state constitutional provisions and state courts generally or of Wisconsin constitutional provisions.[14] Furthermore, there are of-

---

[13] *See, e.g., Shadwick v. City of Tampa,* 407 U.S. 345 (1972); *State ex rel. White v. Simpson,* 28 Wis. 2d 590, 137 N.W.2d 391 (1965); *State v. Van Brocklin,* 194 Wis. 441, 217 N.W. 277 (1927).

[14] Here are some historical materials that might be helpful in cases calling for analysis of the Wisconsin Constitution: Jack Stark, *The Wisconsin State Constitution: A Reference Guide* (1997); Joseph A. Ranney, *Trusting Nothing to Providence: A History of Wisconsin's Legal System* (1999); J. B. Winslow, *The Story of a Great Court* (1912); Alice E. Smith, *The History of Wisconsin Volume I: From Exploration to Statehood* (1973); Richard N. Current, *The History of Wisconsin Volume II: The Civil War Era, 1848–1873* (1976); Robert C. Nesbit, *The History of Wisconsin Volume III: Urbanization and Industrialization, 1873–1893* (1985); John D. Buenker, *The History of Wisconsin Volume IV: The Progressive Era, 1893–1914* (1998); Paul W. Glad, *The History of Wisconsin Volume V: War, a New*

ten different historical narratives, and there is the ever-present danger that history can be read selectively to support a particular result.[15]

¶ 86. While I concur in the result reached by the majority, I do not join the majority opinion because I have reservations about its analysis of Wisconsin constitutional history.

¶ 87. For example, the majority opinion relies heavily on the historical role of justices of the peace for its conclusion that certain actors may exercise some judicial power without exercising the constitutional concept of "judicial power." The majority opinion reads the pre-1966 constitution as providing that only "some judicial power" and judicial power "of a different sort" were vested in justices of the peace. Majority op., ¶ 21.

---

*Era, and Depression, 1914–1940* (1990); William F. Thompson, *The History of Wisconsin Volume VI: Continuity and Change, 1940–1965* (1988); M.M. Quaife, *Wisconsin: Its History and Its People* (1924); M.M. Quaife ed., *The Movement for Statehood* (1918); M.M. Quaife ed., *The Struggle Over Ratification 1846–1847* (1918); M.M. Quaife ed., *The Convention of 1846* (1919); M.M. Quaife ed., *The Attainment of Statehood* (1928); William R. Smith, *The History of Wisconsin* (1885); Moses M. Strong, *History of Wisconsin Territory* (1885). A series of articles by Joseph A. Ranney is listed at http://wicourts.gov/courts/history/articles.htm.

[15] For discussions of the use (and misuse) of history in constitutional analysis of the federal constitution, see, *e.g.,* Richard A. Primus, *Judicial Power and Mobilizable History,* 65 Md. L. Rev. 171 (2006); Kenneth J. Burchfiel, *Revising the "Original" Patent Clause: Pseudohistory in Constitutional Construction,* 2 Harv. J. Law & Tech. 155 (1989); Erwin Chemerinsky, *History, Tradition, the Supreme Court, and the First Amendment,* 44 Hastings L.J. 901 (1993); Lucian E. Dervan, Comment, *Selective Conceptions of Federalism: The Selective Use of History in the Supreme Court's States' Rights Opinions,* 50 Emory L.J. 1295 (2001).

Yet the pre-1966 constitution, quoted above, vested judicial power in justices of the peace in the same sentence as it vested judicial power in named courts.

¶ 88. The majority opinion seems to rely on the fact that the legislature determined the jurisdiction of justices of the peace to distinguish "judicial power" vested in justices of the peace from judicial power vested in courts. But the legislature determined the jurisdiction of courts, as well.[16] That the legislature determined the authority of justices of the peace and court commissioners does not tell us whether the issuance of a search warrant is within the constitutional concept of "judicial power."

¶ 89. The majority opinion also looks to the historical powers of justices of the peace in other jurisdictions. Majority op., ¶ 18. The majority opinion describes the justice of the peace as being "responsible for a variety of executive and quasi-judicial functions."[17] The articles cited by the majority to support this proposition do not describe the powers of the justice of the peace as non-judicial or quasi-judicial. In fact, one

---

[16] See, e.g., Faust v. State, 45 Wis. 273, 275–76 (1878).

Prior to 1978, Article VII, Section 8 of the Wisconsin Constitution provided as follows:

> The circuit courts shall have original jurisdiction in all matters civil and criminal within this state, not excepted in this constitution, *and not hereafter prohibited by law* . . . (emphasis added).

Article VII, Section 8 of the present constitution provides:

> *Except as otherwise provided by law,* the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction in the circuit as the legislature may prescribe by law . . . (emphasis added).

[17] See majority op., ¶ 18 (citing David F. Forte, *Marbury's Travail: Federalist Policies and William Marbury's Appointment as Justice of the Peace,* 45 Cath. U. L. Rev. 349, 354 (1996)).

article explains that justices of the peace handled major civil actions, as well as numerous other matters.[18]

¶ 90. Additionally, the majority's emphasis on the legal training of judges and justices of the peace in the 19th century and the method of selection also seems to be selective about what we know. Majority op., ¶ 20. Few lawyers went to law school in the 19th century. Legal training took place predominantly in law offices and therefore would be highly varied. That some persons had legal training or were elected does not, in my opinion, answer the question of the authority of court commissioners to issue search warrants.

¶ 91. For these reasons, I am not persuaded that the history of the powers of justices of the peace in Wisconsin or elsewhere as set forth in the majority opinion assists us in determining whether court commissioners may issue search warrants.

¶ 92. I am also concerned by the majority's analogy to the United States Constitution to bolster its conclusion that court commissioners may issue search warrants. *See* majority op., ¶¶ 34–36. The United States and Wisconsin constitutions are different with regard to the power of the courts. There is a significant body of law interpreting the phrase "judicial power" in the federal Constitution, and interpretation is continu-

---

[18] *See* David F. Forte, *Marbury's Travail: Federalist Policies and William Marbury's Appointment as Justice of the Peace,* 45 Cath. U. L. Rev. 349, 354 (1996).

Another article cited by the majority claims it is "likely that . . . non-elite judges, like justices of the peace" issued search warrants. *See* Fabio Arcila, Jr., *In the Trenches: Searches and the Misunderstood Common-Law History of Suspicion and Probable Cause,* 10 U. Pa. J. Const. L. 1, 6 (2007).

ing.[19] All or part of this body of law may not be applicable to the Wisconsin Constitution.

¶ 93. For the reasons set forth, I write separately.

---

[19] *See, e.g., Stern v. Marshall,* ___ U.S. ___, 131 S. Ct. 2594 (2012).